UNITED STATES of America

v.

Patrick A. **WILLIAMS**, Appellant.

No. 91–3164.

United States Court of Appeals,
District of Columbia Circuit.

Argued Nov. 2, 1992.
Decided Dec. 15, 1992.

---

Leigh A. Kenny, Asst. Federal Public Defender, with whom A.J. Kramer, Federal Public Defender, and Michael C. Wallace, Sr., Asst. Federal Public Defender, were on the brief, for appellant.

Edward Francis McCormack, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., John R. Fisher, Roy W. McLeese, III, Robert J. Meyer, and Eric L. Yaffe, Asst. U.S. Attys., were on the brief, for appellee.

Before: SILBERMAN, BUCKLEY, and D.H. GINSBURG, Circuit Judges.

Opinion for the Court filed by Circuit Judge SILBERMAN.

SILBERMAN, Circuit Judge:

Patrick A. Williams was convicted of possession with the intent to distribute more than five grams of cocaine base in violation of 21 U.S.C. § 841(a)(1). Williams complains that the district court, contrary to Federal Rule of Evidence 704(b), permitted an expert to testify about Williams' intent. Although the prosecutor did ask a question about Williams' intentions that could have elicited an improper response, we think that the district court's corrective instruction cured any defect. Williams also asserts that the court incorrectly concluded that it lacked the authority to depart downward in calculating Williams' sentence to reduce disparity between his sentence and others involved in the same criminal incident. We join the majority of circuits and reject the notion that the Sentencing Guidelines permit a trial judge to reduce disparity of sentences among defendants in a single case at the expense of uniformity of national Guidelines.

## I.

In the early morning hours of December 19, 1990, several police officers executed a search warrant for the house of Anna and George Singleton at 729 Morton Street, N.W. After they received no reply to their knock on the door and announcement of their presence, the officers forcibly entered. Officer Johnnie Watson walked down a corridor and pulled back a curtain from the doorway leading to the living room. He saw Williams pulling a large zip-lock bag from his waistband as Williams ran to the other door. Watson drew his revolver and ordered Williams to freeze and drop to the floor. Securing the area near Williams, the police found a second large zip-lock bag and a loaded .357 magnum under the cushions of a couch within arm's reach of Williams. When they lifted Williams from the floor, the officers found $1,354 in cash directly beneath him. The zip-lock bag that Williams pulled from his waistband contained 53 smaller zip-lock bags, each of which contained a rock-like substance. And the second zip-lock bag held 48 small zip-lock bags filled with the same substance. The contents of all the bags field-tested as cocaine. Among the other individuals the police arrested was one of the owners of the house, Anna Singleton, who was found in possession of three small zip-lock bags, one of which contained cocaine base. She later pleaded guilty to a misdemeanor and testified against Williams at his trial.

Williams was indicted for possession of more than five grams of cocaine base with intent to distribute, 21 U.S.C. § 841(a)(1), and for the use or carrying of a firearm during a drug trafficking offense, 18 U.S.C. § 924(c)(1). At trial, Officer David C. Stroud, a member of the Metropolitan Police Department for 22 years and the Narcotics Task Force for the last eight years, offered expert testimony concerning the use and distribution of crack cocaine. After Stroud provided background testimony explaining the general use of cocaine, the prosecutor sought to have Stroud differentiate the quantity of drugs typically associated with distribution from an amount consistent with personal use. This line of questioning led to the following exchange:

Q. Officer Stroud, directing your attention to the number of zip-lock bags as reported in that report, does that quantity and the packaging indicate anything in your opinion as to the *intentions* of the person who possessed those bags? (emphasis added).

A. Yes, sir. These bags were meant to be distributed at street level.

. . . . .

DEFENSE COUNSEL: Your Honor, I object to the phrase of the answer that— he's saying what the defendant intended to do with those bags.... That is not permissible.

THE COURT: I think he's giving his opinion, as I understand it. Is that right, officer?

OFFICER STROUD: That's correct.

THE COURT: You aren't referring and you have no knowledge, I take it, about this particular case?

OFFICER STROUD: That's also correct.

Q. Do you still have my question in mind, Officer Stroud?

A. With reference to what these bags were intended for?

Q. Right.

A. Yeah, street level distribution.

The jury found Williams guilty of possession with intent to distribute but not guilty of the firearms charge. At Williams' sentencing hearing, the district court determined an offense level of 28 and sentenced Williams to the shortest sentence in the applicable sentencing range, 78 months followed by four years of supervised release. Williams' attorney asked for a downward departure, in part, because Anna Singleton received a much lighter sentence. Specifically, he argued that Williams "may have been less responsible than the individuals who benefited so well from the gratuities of the government plea offer of a misdemeanor." In rejecting this argument, the district judge concluded that, "I cannot ... and I will not depart downward because of those circumstances."

## II.

█ Williams argues that Officer Stroud's testimony in response to the prosecutor's question concerning the "intentions of the person who possessed those bags" violated Federal Rule of Evidence 704(b). Because it was clear when Stroud testified that Williams was "the person who possessed those bags," it is claimed that Stroud made a forbidden determination of a defendant's mental state. To be sure, the prosecutor's question easily could have elicited testimony in violation of Rule 704(b)'s prohibition of testimony as to "whether the defendant did or did not have the mental state or condition constituting an element of the crime charged." Officer Stroud's response, "[t]hese bags were meant to be distributed at street level," was, however, somewhat ambiguous—indeed, it seems to answer a different question, *i.e.*, for what purpose were the bags designed? But in light of the prosecutor's awkward question, the case would be troubling had the district judge not intervened. An expert's opinion that a specific defendant had the "intentions" to distribute cocaine might be thought a determination prohibited by Rule 704(b). *Cf. United States v. Boney*, 977 F.2d 624, 630 (D.C.Cir. 1992) ("[A] direct opinion on guilt or innocence would be barred.").

█ We think the court's comment, although not precise, eliminated the difficulty by leading the jury to understand that Stroud's assessment of the "intentions of the person who possessed those bags" addressed the intentions of a hypothetical typical individual, not Williams in particu-

lar. We have repeatedly allowed expert testimony concerning the *modus operandi* of individuals involved in the drug trade. *See, e.g., id.* at 629; *United States v. Dunn*, 846 F.2d 761, 763 (D.C.Cir.1988). By observing that Stroud did not direct his testimony to this particular case, the court characterized Stroud's answer as general *modus operandi* evidence rather than an opinion about specific intent. We conclude, therefore, that the district court did not err[1] in permitting Stroud's testimony.[2]

## III.

█ Williams also argues that the district court judge committed error when he concluded that he lacked authority to make a downward departure from the Sentencing Guidelines to ameliorate the significant disparity in the sentences of Williams and the others arrested with him. When Williams' attorney argued for a departure in the sentencing hearing, the district judge explained that, "I'm afraid that can't affect my judgment.... I cannot find and will not depart downward because of those circumstances." Although some of his wording could be interpreted to mean that the court made a discretionary decision not to depart downward, the overall context suggests that the judge felt powerless to reduce the sentence below the minimum. We, therefore, review his decision *de novo*. *United States v. Lopez*, 938 F.2d 1293, 1296 (D.C.Cir.1991).

Williams argues that the disparity between his sentencing range minimum of 78 months and Anna Singleton's sentence of probation justifies a departure below the

---

1. Even if Stroud's testimony had violated Rule 704(b), its admission would have been a harmless error. *Cf. United States v. Baskin*, 886 F.2d 383, 387–88 (D.C.Cir.1989), *cert. denied*, 494 U.S. 1089, 110 S.Ct. 1831, 108 L.Ed.2d 960 (1990). Even without the contested testimony, the government demonstrated Williams' intent to distribute through Anna Singleton's testimony about his use of her house to cut up and package cocaine, and Stroud's unchallenged opinions that the amount of cocaine involved was inconsistent with personal use, and that substantial profits could be made by buying this quantity wholesale and selling it retail. Overall, the government offered overwhelming evidence of Williams' guilt, including that he was discov-

ered in possession of 53 zip-lock bags of cocaine base.

2. Williams also contends that Stroud's testimony about the use of crack cocaine was unhelpful and unduly prejudicial in violation of Federal Rules of Evidence 702 and 403. Stroud's testimony concerning the methods of crack use and the amount needed to obtain a "high," however, provided useful background information and helped to demonstrate that the amount of cocaine base involved was inconsistent with personal use. The court clearly did not abuse its discretion by permitting Stroud to testify about crack use. *Dunn*, 846 F.2d at 763.

Guidelines' minimum. He relies on the Sixth Circuit's conclusion that a sentencing disparity between codefendants can be so great as to "permit, even require, sentencing judges to depart from the guidelines in order to *achieve* reasoned uniformity among similarly situated criminal actors." *United States v. Nelson*, 918 F.2d 1268, 1272 (6th Cir.1990) (emphasis in original). *But see United States v. Parker*, 912 F.2d 156, 158 (6th Cir.1990) (earlier panel) (holding that the sentencing judge cannot depart downward solely because of a disparity in the sentences of codefendants).[3]

We do not accept the *Nelson* Court's reading of the Sentencing Guidelines. Congress, in creating the Sentencing Commission and authorizing the Guidelines, intended to permit downward departures based only on "an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines." 18 U.S.C. § 3553(b); *United States v. Harrington*, 947 F.2d 956, 957 (D.C.Cir.1991). The very purpose of the Guidelines, however, was to eliminate disparity in the sentences of similarly situated defendants. *United States v. Joyner*, 924 F.2d 454, 460 (2d Cir.1991). To isolate a single case and conclude that the Sentencing Guidelines inadequately consider sentencing disparity among several defendants is to lose sight of the forest for the trees. The Guidelines attempt to achieve uniform sentences across the nation not within a particular criminal transaction, and "[t]he greater uniformity trumps the lesser disparity." *United States v. Mejia*, 953 F.2d 461, 468 (9th Cir.1991). The nationwide uniformity at which the Guidelines aim is directed not just to the particular criminal conduct which codefendants may share, but also to factors like criminal history and acceptance of responsibility which may well vary between codefendants.

The rule that Williams urges, moreover, would undermine the practice of plea bargaining. In this case, Williams' attorney contended that Williams deserved a downward departure, in part, because Anna Singleton "benefited so well from the gratuities of the government plea offer of a misdemeanor." The efficiency and propriety of the prosecutor's decision to seek the cooperation of an individual found with one small zip-lock bag of crack to facilitate the prosecution of someone found with 53 zip-lock bags of crack is beyond question. *See Brady v. United States*, 397 U.S. 742, 751–52, 90 S.Ct. 1463, 1471, 25 L.Ed.2d 747 (1970). The efficacy of this arrangement would surely decrease if every time the government exchanged a plea bargain for a witness' cooperation it took the risk that the plea would water down the sentences imposed on the other defendants. *See Mejia*, 953 F.2d at 468. We do not think that the Sentencing Guidelines contemplated this sort of interference with prosecutorial discretion. Accordingly, we join the majority of circuits that have faced the issue and conclude that the sentencing judge has no authority to depart downward because of a disparity in the sentences imposed on individuals involved in the same criminal transaction. *Accord id.; United States v. Jackson*, 950 F.2d 633, 637–38 (10th Cir.1991); *United States v. Wogan*, 938 F.2d 1446, 1448 (1st Cir.), *cert. denied*, — U.S. —, 112 S.Ct. 441, 116 L.Ed.2d 460 (1991); *Joyner*, 924 F.2d at 460.

The judgment of the district court is therefore affirmed.

*So Ordered.*

---

**3.** Williams also cites *United States v. Boshell*, 952 F.2d 1101 (9th Cir.1991), to support downward departure authority. But *Boshell* involved a unique situation in which the court departed downward because, although Boshell was subject to the Guidelines, several of his codefendants were sentenced under pre-Guidelines standards. *See id.* at 1107–09. In light of the Ninth Circuit's rejection of a general authority to depart downward to alleviate sentencing disparities between codefendants, *United States v. Mejia*, 953 F.2d 461, 468 (9th Cir.1991), we read *Boshell* as limited to its unusual facts.