UNITED STATES of America

v.

Keith Len MITCHELL, Appellant.

UNITED STATES of America

v.

Richard Leroy BOWE, Appellant.

UNITED STATES of America

v.

Janet Arnice WILSON, Appellant.

Nos. 91–3515, 91–3324 and 91–3058.

United States Court of Appeals,
District of Columbia Circuit.

Argued May 3, 1993.

Decided July 2, 1993.

As Amended July 2, 1993.

Suggestion for Rehearing En Banc
in No. 91–3324 Denied
Sept. 21, 1993.

James T. Maloney (appointed by the Court), argued the cause for appellant Richard L. Bowe in No. 91–3324.

Ellen Berry, Asst. Federal Public Defender, argued the cause for appellant Keith L. Mitchell in No. 91–3515. With her on the brief was A.J. Kramer, Federal Public Defender.

Thomas F. Dunn (appointed by the Court), argued the cause for appellant Janet A. Wilson in No. 92–3058.

Barbara K. Bracher, Asst. U.S. Atty., argued the cause for appellee. With her on the

brief were Jay B. Stephens, U.S. Atty. at the time the brief was filed, John R. Fisher, Thomas C. Black and Mary B. Murphy, Asst. U.S. Attys.

Before: SILBERMAN, BUCKLEY and WILLIAMS, Circuit Judges.

Opinion for the Court filed by Circuit Judge STEPHEN F. WILLIAMS.

STEPHEN F. WILLIAMS, Circuit Judge:

Keith L. Mitchell, Richard L. Bowe and Janet A. Wilson were tried before a jury in United States district court and convicted of possession with intent to distribute crack cocaine. Appellants challenge their convictions in this consolidated appeal.

■ Appellant Wilson raises only one claim in her appeal: that the district judge erred in denying her motion for a mistrial after a juror was contacted by someone close to appellant Mitchell. We can quickly dispose of the argument. The ex parte communication was a phone call to one of the jurors from a man the juror thought was defendant Mitchell's uncle, but apparently was the uncle of Mitchell's girlfriend. The juror notified the court of the contact, and the court excused her from service. The court also conducted a voir dire of her and all the other jurors and determined that the contact would not prejudice the trial in any way. The inquiry was sufficient, and on the resulting record the decision was completely reasonable. See *United States v. Butler*, 822 F.2d 1191, 1196 (D.C.Cir.1987). We affirm Wilson's conviction.

Appellants Mitchell and Bowe raise two different claims: (1) that no reasonable jury could find that they had either constructively possessed the cocaine found concealed on Wilson or had aided and abetted Wilson in her crime; and (2) that the trial judge erred in admitting the testimony of the government's drug expert because he impermissibly testified as to the defendants' intent and guilt, and because his testimony was more prejudicial than probative. On the first point, we find that there was enough evidence to uphold the convictions. On the second, we find that the government expert's testimony violated Federal Rule of Evidence

704(b) by speaking directly to the intent of the defendants. No proper objection on grounds of rule 704(b) was made, however, and we find that admission of the testimony was not plain error.

\*   \*   \*

■ On June 20, 1991, officers from the Washington Metropolitan Police Department set up an observation post on the 2600 block of 13th Street, N.W. From their post the officers observed and videotaped suspected drug activities at three adjacent apartment buildings. As part of the operation, undercover officer Towanna May met with Janet Wilson to purchase drugs. To arrange a sale of a quarter-ounce of crack cocaine to Officer May, Wilson introduced May to defendant Bowe, saying his dope was better than that of "Jamaica Mike", a previous supplier. Bowe sold $50 worth of cocaine to May at that time, and told her to call him the next day to arrange the larger purchase. On June 21, 1991, Officer May returned for that purpose and encountered Bowe, and then Mitchell and Wilson. Mitchell offered to combine his drugs with Bowe's, and Bowe proposed to sell May a total of ten rocks for $300. Bowe and Mitchell had only six rocks on hand, however; after they transferred the six to May, Wilson told May to wait in an apartment while she went with Mitchell for the balance.

When Mitchell and Wilson returned, they went into a bedroom with May, and helped her to select the additional four rocks from a towel full of small ziplock bags which Mitchell had brought back with him. May paid $25 to Wilson and $300 to Mitchell. Upon returning to the surveillance team, May described the three defendants. Ms. Wilson was soon after arrested in front of one of the apartment buildings, and the ensuing search revealed nine ziplock bags of cocaine concealed in her bra. Bowe and Mitchell were arrested as they walked away from the apartment buildings; neither was carrying any drugs.

All three defendants were indicted on multiple counts of narcotics violations. The $50 sale on June 20 and the $300 sale on June 21 were each reflected in charges of distribution

of crack cocaine and distribution of crack cocaine within 1000 feet of a school, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(iii), 841(b)(1)(C), 860(a) and 18 U.S.C. § 2, for a total of four counts, while the rocks found in Wilson's bra were reflected in a charge of possession with intent to distribute crack, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 18 U.S.C. § 2. The jury found all three defendants guilty on the possession count. It acquitted on the June 20 distribution charges and could not reach a verdict on those relating to the June 21 sale. The trial judge declared a mistrial on the latter counts.

### Sufficiency of the evidence

Bowe and Mitchell argue that the government introduced insufficient evidence for the jury reasonably to conclude that they constructively possessed the drugs found in Wilson's bra, or that they aided and abetted Wilson in her possession with intent to distribute—the two theories argued by the government to show their unlawful possession. As the evidence adequately supports conviction on the aiding and abetting charge, we need not reach the constructive possession theory.

To sustain an aiding and abetting conviction, the government must show that the defendants had "sufficient knowledge and participation to indicate that [they] knowingly and willfully participated in the offense in a manner that indicated [they] intended to make it succeed." *United States v. Raper*, 676 F.2d 841, 849 (D.C.Cir.1982); see also *United States v. Peoni*, 100 F.2d 401, 402 (2d Cir.1938) (L. Hand, J.).

Mitchell and Bowe argue that the government fell short of meeting its burden because it produced no direct evidence that they knew Wilson had drugs in her bra or that they tried to facilitate the sale of those particular drugs. Mitchell acknowledges evidence that the three codefendants had combined to distribute ten bags of cocaine base just before they were arrested, but argues that the jury had no basis for inferring that Mitchell would entrust Wilson with the drugs. Bowe simply argues that there was no evidence that he was present when Wilson concealed the drugs.

The government clearly presented powerful evidence of Wilson's involvement with Mitchell's and Bowe's prior drug transactions, supporting an inference of general cooperation among the three in the field of drug distribution. More importantly, when Mitchell returned to the apartment with Wilson, he had a towel containing numerous ziplock bags containing cocaine rocks, only four of which were needed to make up the ten that he and Bowe proposed to sell to May. A very short time later, Mitchell had no drugs on him upon leaving the building, but Wilson had nine ziplock bags of cocaine. It was not unreasonable for a jury to be convinced (beyond a reasonable doubt) that Mitchell had given his drugs to Wilson to conceal and—given their prior relationship—ultimately to sell. And Bowe was clearly in cahoots with Mitchell with respect to the distribution of precisely these drugs.

Reviewing the evidence in the light most favorable to the government, *United States v. Jefferson*, 974 F.2d 201, 205 (D.C.Cir.1992), we find that a reasonable jury could have found beyond a reasonable doubt that Bowe and Mitchell aided and abetted Wilson.

### Misuse of expert testimony

■ Appellants' second claim is more compelling. At trial, the government called Officer David Stroud to testify as an expert on packaging and distribution of crack cocaine in the District of Columbia. Appellants claim that part of Stroud's testimony was admitted in violation of Fed.R.Evid. 704(b), which states that

> No expert witness testifying with respect to the mental state or condition of a defendant in a criminal case may state an opinion or inference as to whether the defendant did or did not have the mental state or condition constituting an element of the crime charged or of a defense thereto. Such ultimate issues are matters for the trier of fact alone.

The testimony at issue consisted of the following question and answer in the government's direct examination of Stroud:

Q: Now, what, if anything, does the packaging of that crack cocaine into nine individual ziplocks tell you about the intent of the person that was carrying those ziplocks?

A: It was intent to distribute.

At that point Wilson's counsel objected on grounds that there was no factual basis for the inference of distribution. Mitchell's counsel objected on grounds that the question should have been phrased as a hypothetical, but withdrew her objection when Bowe's counsel indicated that he didn't like hypotheticals. When the examination resumed, the following exchange occurred without objection:

Q: Why are you able to say that the person in possession of those nine individual ziplocks, $50 rocks of crack cocaine, has the intent to distribute them?

A: As I stated earlier, the packaging is consistent with the way crack cocaine is packaged for street-level distribution

Mitchell and Bowe claim that Stroud's testimony constituted an opinion as to the intent and guilt of the defendants, in violation of Rule 704(b). As there was no identifiable objection on Rule 704(b) grounds at trial, and the issue is raised for the first time on appeal, we review only for plain error.

Circuit precedent makes clear that Rule 704(b) allows an expert to state that certain conduct fits a specific role in a criminal enterprise—even though the conduct described exactly parallels conduct that other evidence explicitly links to a defendant. *United States v. Boney*, 977 F.2d 624, 629, 631 (D.C.Cir. 1992). The evidence may "match[ ] particular defendants and their actions with paradigm roles in an illegal enterprise." *Id.* at 631. Indeed, we have noted that although "all evidence as to what a defendant *did* bears upon what he *intended to do*", *United States v. Dunn*, 846 F.2d 761, 762 (D.C.Cir. 1988) (emphasis in original), a court may admit testimony as to *modus operandi* linking facts and actions to a particular type of crime, *id.* at 762–63.

There is, however, a line that expert witnesses may not cross. In *United States v. Williams*, 980 F.2d 1463, 1465 (D.C.Cir.1992),

the prosecutor asked the expert witness (also Mr. Stroud) what the packaging of certain quantities of crack cocaine in ziplock bags suggested about "the *intentions* of the person who possessed those bags." Officer Stroud responded that "[t]hese bags were meant to be distributed at street level." *Id.* We made clear that we found the prosecutor's question "awkward", and that despite some ambiguity in Stroud's answer we would have found the case "troubling" had the trial judge not intervened to underscore the witness's total lack of knowledge about the actual case before the jury. *Id.* at 1466.

In the case before us, the prosecutor's question was almost identical to that in *Williams*. The answer, however, that "it was intent to distribute", pointed much more directly to the mental state of "the person that was carrying those ziplocks", namely Wilson. Furthermore, there was no corrective interjection by the trial judge. We thus find Officer Stroud's testimony to cross the line implicit in *Williams*, and to violate Rule 704(b) under our current law.

■ Our inquiry does not end here. We have only established that there was error. For such error to be plain, however, it must (1) have been error under settled law of the Supreme Court or this circuit, and (2) have unfairly prejudiced the jury's deliberations. *United States v. Thomas*, 896 F.2d 589, 591 (D.C.Cir.1990); *United States v. Harrison*, 931 F.2d 65, 70 (D.C.Cir.1991). In this case, we find the testimony to meet neither prong of the plain error standard.

The appellants' trial took place in September 1991, before either *Williams* or *Boney* had been decided. In *Dunn*—decided before that trial—we had held that "[i]t is only as to the last step in the inferential process— a conclusion as to the defendant's actual mental state—that Rule 704(b) commands the expert to be silent." *Dunn*, 846 F.2d at 762. We also cited with approval a Fifth Circuit holding that an expert may explain facts indicating a state of mind, so long as the explanation "did not directly embrace the ultimate question of whether [the defendant] did in fact intend" to engage in the crime

charged. *Id.* at 763 (quoting *United States v. Dotson,* 817 F.2d 1127, 1132 (5th Cir. 1987)).

Here, there is an ambiguity in the disputed exchange that holds the testimony just short of clearly violating Rule 704(b) under *Dunn.* The prosecutor asked what the evidence told Stroud about the intent of "the person" carrying the ziplocks. There was no explicit referent for "the person", although by inference it would have to be defendant Wilson, since the ziplock bags were the ones in evidence in the case and identified as having been found on Wilson. But there was still no explicit reference to the intent of "the defendant". The difference may seem subtle, but Rule 704(b) invites the drawing of rather subtle lines, as both *modus operandi* evidence and responses to purely hypothetical questions effectively speak to intent, though only after certain logical connections are made. Thus in *Boney* we rejected the proposition that the rule bars "testimony that is the functional equivalent of the forbidden". 977 F.2d at 630. The testimony here, though forbidden, was different enough from the strictures of prior cases not to have been plainly forbidden.

Admission of Stroud's testimony also fails the second prong of the plain error test, under which the error must have unfairly prejudiced the jury's deliberations. *Harrison,* 931 F.2d at 70. While the formulation of unfair prejudice is somewhat vague, the case law does give us a benchmark, in that the standard is harder for the plaintiff than the traditional harmless error standard. In other words, we may hold an error to be nonprejudicial for plain error purposes even if we cannot say that it was harmless beyond a reasonable doubt. *Id.*

We find that Stroud's testimony was not sufficiently prejudicial in light of the other evidence presented to the jury. Officer May testified that both Mitchell and Bowe had sold her cocaine packaged in ziplock bags just like those that Wilson was arrested with. Furthermore, May testified that Mitchell had numerous ziplocks of crack wrapped in a towel, four of which she purchased just before the appellants were arrested. Mitchell, who previously had drugs, on arrest had none, while Wilson, who earlier had none, had nine bags full. The inference that Wilson was carrying the balance of Mitchell's drugs is almost inescapable in the absence of some alternative explanation. It seems natural and logical for the jury to infer additionally that, because appellants allowed May to select four bags from among that supply, they intended to distribute the entire cache of ziplocks.

Moreover, although the subtle differences insisted upon by Rule 704(b) must be preserved, Stroud's testimony here focussed solely on the inferences that one would draw from specific quantities of drugs as to the intent of "the person carrying those ziplocks", in this case, Wilson. There was no reference to Mitchell or Bowe, the only defendants raising the point here. As to them, given the transactions that the evidence showed, the case can hardly have pivoted on Stroud's testimony; rather, the crux of their case was the nature of their June 21 entanglements with Wilson. With such evidence of intent before it, we do not believe that the jury could have been unfairly prejudiced by Stroud's testimony, especially where the trial court twice issued instructions to the jury on the limits of expert testimony.

We also reject appellants' claim that Stroud's testimony should have been rejected as improperly prejudicial and cumulative under Fed.R.Evid. 403 and as insufficiently helpful for the trier of fact under Fed. R.Evid. 702. While these objections appear to have been properly raised at trial, the trial judge has broad discretion on both issues. *United States v. Hall,* 969 F.2d 1102, 1110 (D.C.Cir.1992); *United States v. Anderson,* 851 F.2d 384, 394 (D.C.Cir.1988); *Dunn,* 846 F.2d at 763. Federal courts often allow expert testimony on narcotics operations to familiarize jurors with the variety of methods by which drug dealers attempt to pursue and conceal their activities, *Dunn,* 846 F.2d at 763, and defendants point to nothing suggesting any special reason not to do so here.

\* \* \*

Accordingly, the convictions of appellants Mitchell, Bowe and Wilson are

*Affirmed.*