**UNITED STATES of America, Appellee**

v.

**Corey D. BOYD, Appellant.**

**No. 92–3020.**

United States Court of Appeals, District of Columbia Circuit.

Argued April 11, 1995.

Decided May 30, 1995.

---

Lisa D. Burget, Asst. Federal Public Defender, Washington, DC, argued the cause for appellant. With her on the briefs was A.J. Kramer, Federal Public Defender, Washington, DC.

S. Hollis Fleischer, Asst. U.S. Atty., Washington, DC, argued the cause for appellee. With him on the brief were Eric H. Holder, Jr., U.S. Atty., John R. Fisher and Thomas J. Tourish, Jr., Asst. U.S. Attys., Washington, DC.

Before: EDWARDS, Chief Judge, WALD and GINSBURG, Circuit Judges.

HARRY T. EDWARDS, Chief Judge:

Appellant Corey D. Boyd was convicted by a jury in the United States District Court for the District of Columbia for possession with intent to distribute five or more grams of

crack cocaine and for possession with intent to distribute five or more grams of crack cocaine within 1000 feet of a school. Boyd was arrested after police officers briefly spotted him on the street holding a plastic bag between himself and another individual. The officers observed the two men for only a couple of seconds, so they could not see precisely what Boyd and his compatriot were doing, nor could they tell who controlled the plastic bag that was between them. Neither Boyd nor his compatriot was heard to say anything, nor seen to do anything (other than look into the plastic bag), and no money or drug paraphernalia was seen or found. Both men ran upon being spotted by the police, Boyd with the plastic bag still in hand. While being chased, he threw the bag under a truck, and it was recovered by the police. Boyd's compatriot was never found.

At trial, over the objection of the defense, Government counsel recited "hypothetical" facts exactly mirroring the alleged facts surrounding Boyd's arrest, and then was allowed to ask Police Officer Stroud, a purported "expert," whether those facts were consistent with possession for personal use or possession with an intent to distribute. Stroud testified that, in his "opinion," the facts showed "possession with intent to distribute." Boyd contends that, under Federal Rule of Evidence 704(b), Officer Stroud's testimony should not have been admitted. We agree.

It was a flagrant breach of the Rules of Evidence for the Government to elicit the opinion of an expert on the ultimate issue of fact that was for the jury alone to decide. Rule 704(b) is absolutely clear in its proscription: "No expert witness . . . may state an opinion . . . as to whether the defendant did or did not have the mental state . . . constituting an element of the crime charged. . . . Such ultimate issues are matters for the trier of fact alone." And it is no answer that the Government indulged the subterfuge of a "hypothetical" question to avoid the Rule. Here, the Rule was violated because the expert was allowed to address a hypothetical that was a carbon copy of the matter before the jury, thus effectively giving a forbidden

opinion on the case at hand. Accordingly, we reverse the conviction and remand the case to the District Court.

## I. Background

On February 4, 1991, at approximately 6:50 p.m., four officers from the Metropolitan Police Department drove in an unmarked car down the 1600 block of Holbrook Street, N.E. Officer Bradley Belden, who was riding in the rear seat of the car, saw Boyd and an unidentified man standing in front of 1523 Holbrook Street. Boyd and his compatriot were seen for only a brief moment; however, Officer Belden claimed to observe Boyd holding a plastic bag that the appellant and the other man were looking into. Officer Belden did not claim to hear anything spoken between Boyd and his compatriot, nor could he tell what the men were doing (other than looking into the plastic bag). No money was seen to exchange hands, and no drug paraphernalia was seen or ever found.

When the police cruiser stopped at the corner of the street, both Boyd and his compatriot ran away. While pursuing Boyd, Officer Belden observed him throw the plastic bag under a truck parked on Childress Street. The officers caught and arrested Boyd, who had by that time ceased running; however, the unidentified man escaped into a nearby playground. The officers also recovered the plastic bag, which contained seven small rocks of crack cocaine in small plastic ziplock bags and three larger rocks of crack cocaine, totaling just over six grams. Both the area where Boyd was first seen holding the plastic bag and the place where he was arrested are within 1000 feet of Webb Elementary School.

On March 5, 1991, Boyd was indicted by a grand jury for possession with intent to distribute five grams or more of crack cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(iii) ("Count One"), and for possession with intent to distribute five or more grams of crack within 1000 feet of a school, in violation of 21 U.S.C. §§ 841(a)(1) and 845a(a)[1] ("Count Two"). At trial, the Government called Officer David Stroud to testi-

---

1.  21 U.S.C. § 845a(a) has been recodified as 21 U.S.C. § 860(a).

fy as an expert on packaging and distribution of crack cocaine in the District of Columbia. The Government's direct examination of Officer Stroud led to the following exchange:

THE GOVERNMENT: Now, Officer Stroud, I am going to ask you a hypothetical question based on your experience as an expert witness. Suppose a person—

DEFENSE COUNSEL: Your Honor, I am going to object to the hypothetical without hearing a proffer.

THE COURT: Well, we haven't heard it yet.

THE GOVERNMENT: Suppose a person is on a street corner at about 6:50 p.m. here around the 1600 block of Holbrook Street, Northeast. Suppose that person is holding a plastic sandwich bag in his hand and displaying the contents of that plastic bag to another person. Suppose that the contents of that bag being displayed by that person are ten rocks of crack/cocaine, seven of which are packaged in individual, small ziplocs and three larger ones loose in the larger plastic bag. Suppose that the total weight of the actual crack/cocaine in that plastic bag being shown by the person is about 6.037 grams.

\* \* \* \* \* \*

THE GOVERNMENT: ... Now, finally, suppose that plainclothes vice officers drive into the area. The person holding the plastic bag—as the officers pull up to that person, the person holding the plastic bag flees from the area; and, within a block or two, tosses the plastic bag containing the crack/cocaine under a car in the area.

Now, given those hypothetical facts, Officer Stroud, in your opinion, is that person's possession of the mixture or substance, 6.037 grams containing crack/cocaine, possession for personal use or is it consistent with possession with intent to distribute?

THE COURT: Now, before you answer that, let me hear the objection.

DEFENSE COUNSEL: I will object to that, Your Honor.

THE COURT: All right. The objection is overruled.

OFFICER STROUD: Possession with intent to distribute.

Trial Tr. (May 22, 1991) at 87–88, *reprinted in* Appendix for Appellant. The prosecution continued to question Officer Stroud about the hypothetical scenario, including several queries about ways in which drug dealers attempt to avoid detection.

At the close of trial on May 23, 1991, the jury found Boyd guilty of both counts in the indictment. On January 17, 1992, the District Court sentenced Boyd to 78 months imprisonment, to be followed by four years of supervised release, on Count One, and a concurrent sentence of 60 months imprisonment, to be followed by eight years of supervised release, on Count Two.

## II. ANALYSIS

Boyd argues that Officer Stroud's testimony in response to the Government's question—"[I]s that person's possession ... consistent with possession with intent to distribute?"—was admitted in violation of Federal Rule of Evidence 704(b). He contends that, even though posed as a hypothetical, the fact that the Government's question exactly mirrored the factual circumstances under which Boyd was arrested makes clear that Officer Stroud was really opining about Boyd's intent. We too find this conclusion inescapable.[2]

Rule 704(b) provides:

No expert witness testifying with respect to the mental state or condition of a defendant in a criminal case may state an opinion or inference as to whether the defendant did or did not have the mental state or condition constituting an element of the crime charged or of a defense thereto. Such ultimate issues are matters for the trier of fact alone.

---

**2.** Because appellant's Rule 704(b) argument is dispositive of this case, we do not reach the other issues raised by Boyd in this appeal.

FED.R.EVID. 704(b). Although enacted to limit psychiatric testimony when a criminal defendant relies upon the defense of insanity, *see* S.REP. No. 225, 98th Cong., 1st Sess. 230 (1983), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3412, Rule 704(b) applies in fact to all instances in which expert testimony is offered as to a mental state or condition constituting an element of the crime charged or defense thereto, *see id.* at 231, *reprinted in* 1984 U.S.C.C.A.N. at 3413; *United States v. Windfelder*, 790 F.2d 576, 580 (7th Cir.1986). We review the District Court's admission of testimony under Rule 704(b) for abuse of discretion.[3] *United States v. Salamanca*, 990 F.2d 629, 637 (D.C.Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 337, 126 L.Ed.2d 281 (1993).

█ We have repeatedly held that expert testimony concerning the *modus operandi* of individuals involved in drug trafficking does not violate Rule 704(b), *see, e.g., United States v. Clarke*, 24 F.3d 257, 268–69 (D.C.Cir.1994); *United States v. Chin*, 981 F.2d 1275, 1278–79 (D.C.Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 2377, 124 L.Ed.2d 281 (1993); *United States v. Dunn*, 846 F.2d 761, 762–63 (D.C.Cir.1988), even though " 'all evidence as to what a defendant *did* bears upon what he *intended to do*,' " *United States v. Mitchell*, 996 F.2d 419, 422 (D.C.Cir.1993) (quoting *Dunn*, 846 F.2d at 762). For example, a Government expert may testify about the significance of drug packaging, *see, e.g., Dunn*, 846 F.2d at 762–63, the uses of various drug paraphernalia, *see, e.g., id.*, the street value of narcotics, *see, e.g., Clarke*, 24 F.3d at 269, or the various

roles that individuals might play in a typical drug distribution network, *see, e.g., United States v. Harley*, 990 F.2d 1340, 1343 (D.C.Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 236, 126 L.Ed.2d 190 (1993); *United States v. Boney*, 977 F.2d 624, 628–31 (D.C.Cir.1992). Indeed, we have even held that "Rule 704(b) allows an expert to state that certain conduct fits a specific role in a criminal enterprise—even though the conduct described exactly parallels conduct that other evidence explicitly links to a defendant." *Mitchell*, 996 F.2d at 422 (citing *Boney*, 977 F.2d at 629, 631).

The court has made clear, however, that there is "a line that expert witnesses may not cross." *Id.* In *United States v. Williams*, 980 F.2d 1463, 1465 (D.C.Cir.1992), a case in which the Government asked the expert witness what the packaging of certain quantities of crack in ziplock bags suggested about "the *intentions* of the person who possessed those bags," Officer Stroud (again appearing as the expert) responded that "[t]hese bags were meant to be distributed at street level." *Id.* (emphasis added). The court found no violation of Rule 704(b), but made it clear that the Government's question was "awkward," and that "the case would be troubling had the district judge not intervened" to underscore that the expert had no knowledge about the actual case before the jury. *Id.* at 1466.

A similar situation was addressed in *Mitchell*, 996 F.2d at 422, where "the prosecutor's question was almost identical to that in *Williams*." We found, however, that the expert's answer—that "it was intent to dis-

---

**3.** The Government contends that the admission of Officer Stroud's testimony should be reviewed only for plain error, because Boyd's trial counsel did not state the grounds for his objection to that testimony and thus did not properly preserve the Rule 704(b) issue. Defense counsel's objection ideally could have been more specific, but we think that the circumstances of Officer Stroud's testimony left little doubt that Rule 704(b) was the basis for the objection. *See* FED R.EVID. 103(a)(1) (error may be predicated on ruling which admits evidence, where timely objection appears in the record, stating specific ground of objection, or "if the specific ground was … apparent from the context"). Defense counsel objected when the Government first indicated it would be asking Officer Stroud a hypothetical question, as well as immediately after the Gov-

ernment asked Officer Stroud whether, "given those hypothetical facts, … that person's possession … [is] possession for personal use or is it consistent with possession with intent to distribute." Moreover, defense counsel subsequently renewed his objection immediately after the Government again asked Officer Stroud "whether these drugs were possessed with intent to distribute, as opposed to personal use." We think that defense counsel's objections, falling as they did on the heels of questions specifically asking Officer Stroud to give his opinion about the intent of the person in the Government's hypothetical, sufficiently alerted the District Court and opposing counsel that defense counsel believed the Government sought to elicit testimony from an expert witness in defiance of Rule 704(b).

tribute"—"pointed much more directly to the mental state of 'the person that was carrying those ziplocks,' namely [the defendant]." *Id.* Thus, we held that the expert's testimony "cross[ed] the line implicit in *Williams,* and ... violate[d] Rule 704(b) under our current law." *Id.* The court found error in *Mitchell,* although it held that the error did not satisfy the plain error standard that was applied in that case because appellant had failed to raise the Rule 704(b) issue at trial. *Id.* at 422–23.

The instant case goes well beyond what has been found in the past to be permissible under Rule 704(b). This court has never held that the Government may simply recite a list of "hypothetical" facts that exactly mirror the case at hand and then ask an expert to give an opinion as to whether such facts prove an intention to distribute narcotics. Indeed, we would have been remiss even to suggest such an approach, because it flies in the face of Rule 704(b). Yet, this is exactly what happened in the case at hand. Here, the prosecutor simply restated the facts of this case in his question to Officer Stroud, and, although termed a hypothetical, that question was plainly designed to elicit the expert's testimony about the *intent of the defendant.* Thus, when Officer Stroud responded that the hypothetical subject's possession of the crack cocaine was consistent with "intent to distribute," the admission of that testimony clearly violated Rule 704(b), for it is inescapable that the testimony amounted to "an opinion or inference as to whether the defendant did or did not have the mental state or condition constituting an element of the crime charged." Fed.R.Evid. 704(b).

In a case such as this one, where the facts offered at trial are at best ambiguous as to the defendant's role in alleged criminal activity, *expert* testimony on the ultimate issue of fact is likely to have a powerful effect on the result. If a jury has reason to be unsure of a defendant's guilt, but is made to listen to an "expert" who claims to know the defendant's state of mind, the jurors may rely on the purported expertise of the Government witness to cure the ambiguity that they face. This is precisely what the Rule prohibits, for it is the jurors (not the expert) who must decide the ultimate issue of fact. There would be little need for a trial before a jury if an expert is allowed simply to declare the defendant's guilt.

Finally, it is clear that the District Court's error in this case was far from harmless, and the Government has not come close to meeting its burden of demonstrating that the error was not prejudicial. *See United States v. Olano,* —— U.S. ——, ——, 113 S.Ct. 1770, 1778, 123 L.Ed.2d 508 (1993) (where harmless-error review applies, burden of persuasion with regard to prejudice is on the Government); *United States v. Saro,* 24 F.3d 283, 287 (D.C.Cir.1994) (same). Absent Officer Stroud's testimony, the Government's evidence of appellant's intent to distribute was questionable. Accordingly, because we cannot say "with fair assurance ... that the judgment was not substantially swayed by the error," *Kotteakos v. United States,* 328 U.S. 750, 765, 66 S.Ct. 1239, 1248, 90 L.Ed. 1557 (1946), we reverse.

### III. Conclusion

For the foregoing reasons, we reverse the judgment of conviction and remand the case to the District Court for such proceedings as may be appropriate.

*So ordered.*