**UNITED STATES of America, Appellee**

v.

**Lorenzo CONYERS, Appellant**

No. 95–3183.

United States Court of Appeals,
District of Columbia Circuit.

Argued Feb. 20, 1997.

Decided July 1, 1997.

John A. Briley, Jr., appointed by the court, argued the cause and filed the briefs for appellant.

Anne Pings, Assistant U.S. Attorney, argued the cause for appellee, with whom Eric H. Holder, Jr., U.S. Attorney, John R. Fish-

er, Thomas J. Tourish, Jr., and Robert A. Spelke, Assistant U.S. Attorneys, were on the brief.

Before WALD, GINSBURG, and ROGERS, Circuit Judges.

GINSBURG, Circuit Judge:

Lorenzo Conyers was convicted of possession with intent to distribute over 50 grams of cocaine base, in violation of 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 841(b)(1)(A)(iii); distribution of five grams or more of cocaine base within 1,000 feet of a school, in violation of 21 U.S.C. § 860(a); using and carrying a firearm during a drug trafficking offense, in violation of 18 U.S.C. § 924(c)(1); and carrying a dangerous weapon, in violation of D.C.Code§ 22–3204(a)(1). Because he has raised no meritorious challenges to these convictions, we affirm the judgment of the district court.

## I.  Background

The police arrested Lorenzo Conyers as he drove onto the 4200 block of Fourth Street, S.E. on the evening of May 19, 1993. A confidential informant had told the police that an individual transporting cocaine base would drive either an Acura or a Pontiac onto that block at approximately 8:00 P.M., park, and honk the horn. The informant agreed to aid the police, who planned to stake out the block on the night in question, by paging Sergeant Christopher Yezzi when he saw the individual arrive on the block.

At approximately 8:30 P.M. Conyers drove his Pontiac Grand Am to the predicted block, parked, and honked the horn. The confidential source paged Sergeant Yezzi, who gave the signal to converge upon Conyers. Officer Seth Holmes and Sergeant Bruce Fierson drove up and parked their police cruiser in front of Conyers' car. Officer Holmes drew his gun and approached Conyers. The officer opened the driver's side door and told Conyers to raise his hands. Conyers complied. Seeing the outline of a gun in Conyers' waistband, Officer Holmes reached in and removed a loaded .357 Magnum. Another officer later recovered from Conyers' pocket eight bags of what proved to be cocaine base.

## II.  Analysis

Conyers contends, first, that the stop and search to which he was subjected was improper because the confidential informant's tip did not create a reasonable articulable suspicion that Conyers was engaged in criminal activity. Second, he argues that the level of force used by the police was unreasonable and therefore transformed an investigatory stop into an arrest unsupported by probable cause. Finally,Conyers maintains that the district court committed plain error by allowing the Government's expert witness to testify regarding the defendant's state of mind.

### A.  The Investigatory Stop

█ Conyers argues that the confidential informant did not provide the police with information sufficient to give rise to a "reasonable articulable suspicion" for stopping and searching him. In particular, Conyers contends that under *Alabama v. White,* 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990), the informant was required to provide the police with specific details corroborating his tip. This, according to Conyers, the informant failed to do.

The Government responds that Conyers has unjustifiably belittled both the reliability of the informant and the quantity and quality of the information he provided. Unlike the anonymous source in *White,* the confidential informant in the present case was known to the police: He had provided them with reliable information upon three prior occasions. The information he provided in this case, therefore, did not require the type of corroboration provided to the police by the anonymous source in *White.* The Government further contends that the innocent details provided by the informant would have justified an investigatory stop even if the informant had been anonymous, rather than a proven source of accurate information: Conyers drove onto the block in one of the two makes of automobile the informant had predicted; the car had Maryland license plates, as predicted; Conyers arrived just about when the informant said he would ar-

rive; and he stopped and honked his horn, all as the informant had anticipated. Finally, the informant paged Sergeant Yezzi when he saw Conyers drive onto the block, thereby leaving little doubt that Conyers was the suspect.

■ We agree with the Government that the decision of the police to stop Conyers was justified. The police may stop an individual provided they have a reasonable articulable suspicion that he is engaged in criminal activity. *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). A detailed tip from a known confidential informant creates such a reasonable articulable suspicion. *See Adams v. Williams,* 407 U.S. 143, 146–47, 92 S.Ct. 1921, 1923–24, 32 L.Ed.2d 612 (1972) (investigatory stop justified "when a credible informant warns of a specific impending crime"). In this case, the police had two bases upon which to stop Conyers. First, the confidential informant paged the police when Conyers drove onto the block. This contemporaneous identification of Conyers as a suspected drug courier, made by an established source of information, by itself justified the ensuing investigatory stop. Second, the innocent details provided by the informant—the make of the car that Conyers would be driving, that this car would have Maryland tags, the time of his arrival, that he would stop and honk the horn—would also have been enough to justify the stop without the contemporaneous confirmation, in view of the informant's previous reliability.

■ Conyers further contends that the conduct of the police leading to his arrest was not consistent with an investigatory stop but was in fact "intended to be an arrest procedure." Two officers, driving a marked car, suddenly cut in front of Conyers' car and blocked his egress. One of the officers then approached Conyers' vehicle with his weapon drawn and told Conyers to raise his hands over his head. These actions, according to Conyers, constitute an arrest; therefore, the police had to have—but, in his view, lacked— "information sufficient to warrant a prudent person in believing that the suspect has committed or is committing an offense." *United States v. Catlett,* 97 F.3d 565, 573 (D.C.Cir.

1996), *citing Beck v. Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 225–26, 13 L.Ed.2d 142 (1964).

The Government argues that the amount of force used to stop Conyers was reasonable under the circumstances: The police suspected that Conyers was transporting drugs. It is common for a distributor in possession of drugs to flee when confronted by the police. The officers acted reasonably, therefore, when they pulled their car in front of Conyers' vehicle in order to prevent his flight. Moreover, because those who transport drugs often carry (and all too often use) a firearm, Officer Holmes was reasonable in drawing his weapon for his own protection as he approached Conyers seated in his car.

■ We conclude that the detaining officers did not act unreasonably when they pulled their cruiser in front of Conyers' car. An officer may take whatever steps are reasonably necessary to prevent a subject from fleeing during the course of an investigatory stop. *See United States v. Laing,* 889 F.2d 281, 285 (D.C.Cir.1989) (officer may force suspect to lie down during investigatory stop in order to reduce risk of flight). Conyers would not have been the first person suspected of possessing illegal drugs to take flight when confronted by the police. Blocking Conyers' car in order to reduce the risk of flight was, therefore, a reasonable way to begin this investigatory stop.

■ We also conclude that Officer Holmes acted reasonably when he approached Conyers with his weapon drawn. An officer may stop an individual at gunpoint when the threat of deadly force appears "reasonably necessary for the protection of the officer." *United States v. White,* 648 F.2d 29, 34–35 (D.C.Cir.1981). The "critical question" is whether "in light of the totality of the circumstances as viewed from the perspective of a prudent and experienced police officer" the force used was "necessary ... to neutralize the threat of physical harm." *United States v. Clark,* 24 F.3d 299, 304 (D.C.Cir.1994), quoting *Terry,* 392 U.S. at 24, 88 S.Ct. at 1881. As we observed in *Clark,* although "it might have been unreasonable to assume that a suspected drug dealer in a car would be armed" in 1968 when the Supreme Court

decided *Terry,* nowadays "it could well be foolhardy for an officer to assume otherwise." *Id.* We therefore conclude that Officer Holmes' decision to approach Conyers' automobile with his weapon drawn was reasonably necessary for his own protection.

In sum, we conclude that neither the officers' placing a police cruiser in front of Conyers' car nor Holmes' approaching Conyers with his weapon drawn transformed this investigatory stop into an arrest.

## B. Testimony of Expert Witness

■ Conyers argues that the district court erred by allowing the Government's expert witness to testify that the packaging of the drugs found in his possession revealed an intent to distribute those drugs, and to support this conclusion by observing that "the weapon recovered from appellant's person was further proof that he was an experienced drug dealer." According to Conyers, Rule 704(b) of the Federal Rules of Evidence "prohibited the Government from eliciting this testimony, and the district court erred in receiving and considering such evidence as proof of the element of criminal intent on the part of appellant."

The Government counters that its expert witness did not offer any opinion about the intent of the defendant. The expert testified that the sort of packaging used by Conyers was "consistent with distribution in the District of Columbia," and that the .357 Magnum is the revolver of choice among local drug dealers. The Government contends that this type of testimony, offered in order to establish that certain conduct comports with established patterns of criminal behavior, does not violate Rule 704(b) of the Federal Rules of Evidence "even where such testimony may support an inference of appellant's intent."

■ We conclude that the trial court's admission of the expert's testimony did not violate Rule 704(b). An expert witness may testify about an established practice among individuals involved in the drug trade, *see United States v. Dunn,* 846 F.2d 761, 762–763 (D.C.Cir.1988) (expert testimony that packaging paraphernalia, such as vials and wax paper bags, were common among drug distributors did not violate Rule 704(b)); *United States v. Williams,* 980 F.2d 1463, 1466 (D.C.Cir.1992) (same), provided that he does not speak directly to the guilt or innocence of the accused. *United States v. Mitchell,* 996 F.2d 419, 421–22 (D.C.Cir. 1993). In this case, the government witness did not run afoul of that distinction.

### III. Conclusion

For the foregoing reasons, the judgment of the district court is in all respects

Affirmed.