UNPUBLISHED

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
       *Plaintiff-Appellee,*

v.  No. 99-4557

THOMAS L. AMICK,
       *Defendant-Appellant.*

Appeal from the United States District Court
for the Middle District of North Carolina, at Durham.
James A. Beaty, Jr., District Judge.
(CR-98-210)

Argued: September 29, 2000

Decided: October 20, 2000

Before WILKINS and MOTZ, Circuit Judges, and
HAMILTON, Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

## COUNSEL

**ARGUED:** Samuel John Buffone, ROPES & GRAY, Washington,
D.C., for Appellant. Michael Emile Karam, Tax Division, UNITED
STATES DEPARTMENT OF JUSTICE, Washington, D.C., for
Appellee. **ON BRIEF:** Paula M. Junghans, Acting Assistant Attorney
General, Robert E. Lindsay, Alan Hechtkopf, Walter C. Holton, Jr.,
United States Attorney, Tax Division, UNITED STATES DEPART-
MENT OF JUSTICE, Washington, D.C., for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

**OPINION**

PER CURIAM:

In this criminal tax case, Thomas Amick appeals his convictions for tax evasion and tax fraud claiming a number of evidentiary and instructional errors prejudiced his trial. Finding no merit in Amick's claims, we affirm.

I.

In 1985, the Internal Revenue Service assessed a $177,370.63 penalty against Amick for failure to forward to the IRS the withholding taxes deducted from his employees' paychecks. For the next eleven years, Amick structured his affairs so as to avoid having any assets in his name. He founded a new company with ownership vested in a friend and earned no income for his work. Instead, Amick received "loans" from his employer, ostensibly advances for future commissions. The company annually sold these loans to another friend of Amick at as much as a 99% discount; Amick never repaid the loans. Amick sold his house to a friend, and then rented the house for an amount equal to the mortgage payments; Amick's employer paid his rent as part of an "option to purchase agreement" that the employer shared with Amick. In addition, Amick attempted to funnel all of his financial transactions through bank accounts in his wife's name. During this period Amick reported to the IRS that he had minimal or no income and, in fact, one year claimed the Earned Income Tax Credit for poor families.

Amick's "loans" totaled hundreds of thousands of dollars each year. During this period (in which he claimed he received minimal or no income) Amick lived in a prosperous area, took expensive vacations, drove luxury sports cars, and belonged to exclusive clubs. Because Amick told the IRS that he had minimal or no income and no bank accounts, the IRS was unable to levy any of his funds. Over

time, Amick's civil tax assessment grew to nearly $500,000. In 1996, when limitations expired on this liability, Amick had paid the IRS only $400.

The government indicted Amick on various counts of criminal tax evasion and tax fraud in July 1998, and a jury convicted him on all counts on November 20, 1998. Amick appeals, claiming the district court erred by admitting prejudicial evidence of his lifestyle and improper expert testimony, by restricting Amick's ability to impeach witnesses with no comparable control over the government, and by committing various instructional errors.

## II.

Amick first claims that the district court erred by admitting evidence of his extravagant lifestyle, asserting that this evidence was a prejudicial appeal by the government to class bias. Amick contends that the district court should have exercised its gatekeeping function under Federal Rule of Evidence 403, which instructs a court not to admit evidence that has a prejudicial impact outweighing its probative value. Fed. R. Evid. 403.

Amick maintains that he objected to the government's life-style testimony at trial, but the record reveals no such objection. Amick objected only to similar evidence on the unrelated argument that facts involving events occurring after limitations expired on his civil tax liability were inadmissable. Amick never objected to any evidence on the basis of class prejudice. Therefore, we review only for plain error.

The district court did not err in admitting this testimony, let alone plainly err, because its admission did not violate Rule 403. This evidence was important to prove that Amick lied about his income to evade payment. Amick's defense consisted of the claim that he had little or no income, but only loans based on future commissions. That he spent extravagantly belies this defense and is more probative than prejudicial. Moreover, a review of the record indicates that this evidence was not particularly prejudicial. Although the government inquired into several extravagant expenditures, it did not do so in a way to inflame passion.

### III.

Amick next makes various arguments concerning expert witnesses.

Amick contends that two IRS fact witnesses, Agents Muller and Uhlrich, provided unauthorized expert testimony at trial. The rules of evidence require expert witnesses — those who provide specialized knowledge helpful to the trier of fact — to be qualified as such by the trial court. *See* Fed. R. Evid. 702. Both agents testified as to when limitations tolled on Amick's civil tax liability. Amick maintains that this testimony constituted specialized knowledge requiring expert qualification. He concedes he did not object to this testimony at trial, and so we review for plain error. The argument is meritless.

Review of the record indicates the testimony of these agents was not based on expert knowledge. Agents Miller and Uhlrich were fact witnesses who explained their investigation of Amick under the tax laws and the actions they took to recover the taxes he owed. The running of the statute of limitations was a fact relevant to their inquiry. Even if tolling of the limitations period had constituted specialized knowledge requiring expert qualification, admission of this testimony was not plain error. The parties did not dispute when limitations tolled on Amick's civil liability; therefore, Amick suffered no prejudice from testimony on this point.

Amick also contends that Agent Ulrich's testimony should not have been admitted because his civil investigation of Amick assertedly violated Amick's constitutional rights. Ulrich began his civil investigation of Amick after another agent had abandoned it. Amick claims that the other agent had gathered enough information to begin a criminal investigation, and that Agent Ulrich's continuation of the civil investigation violated his Fourth and Fifth Amendment rights and IRS regulations. *See Groder v. United States*, 816 F.2d 139, 142 (4th Cir. 1987).

Once again, Amick's argument fails. The civil investigation would have been unlawful only if (1) Amick had provided the IRS information during an allegedly civil investigation when in fact the IRS was conducting a criminal investigation; and (2) the IRS had misrepresented the nature of its inquiry to Amick. *See United States v. Peter*,

153 F.3d 445, 456 (7th Cir. 19998); *see also Groder*, 816 F.2d at 144 (requiring bad faith on part of investigators). Here, Amick provided no information to the IRS. In fact, the reason the civil investigation proceeded so slowly was because Amick refused to share information or cooperate with the IRS. Additionally, Amick points to no evidence that the IRS misrepresented the nature of its inquiry or acted in anything other than good faith. Amick cannot create a constitutional violation out of the IRS's patience in the face of his intransigence.

Amick also alleges that the district court erred by allowing a government expert witness to testify to the mental state required for an element of a crime in violation of Federal Rule of Evidence 704(b). Agent Herbert Lee testified as an expert witness for the government as to how the IRS determines if a transaction is a loan or disguised income. A critical issue at trial was whether Amick disguised his income as loans to shield it from IRS levies. Amick concedes that we also review this issue for plain error.

An expert witness does not impermissibly testify on mental state evidence if he does not reference "intent" and is clear that his opinion is based upon general criminal practices, and not special knowledge of the defendant's mental processes. *See United States v. Boyd*, 55 F.3d 667, 672 (D.C. Cir. 1995); *United States v. Lipscomb*, 14 F.3d 1236, 1240 (7th Cir. 1994).

Agent Lee did not mention intent, and his testimony concerned general criminal practices. Moreover, for the most part, he only testified to the general factors used by the IRS to determine whether a transfer constituted a loan or income, and avoided the specific facts of this case. While Amick points out that Agent Lee made one case-specific statement and was cautioned by government counsel to keep his testimony general, this caution merely demonstrates the careful effort at trial to ensure Lee's testimony did not violate the rule. The district court did not plainly err in admitting Lee's testimony.

## IV.

Amick next argues that the district court erred by barring evidence he sought to admit to impeach a government witness, while allowing

the government to introduce comparable testimony to impeach a
defense witness.

Amick contends that the district court improperly denied him the
opportunity to introduce by cross-examination or by extrinsic evi-
dence a conversation between Amick's investigator and Mike Rosen-
markle, a close friend, accountant, and co-conspirator of Amick's.
The government did not prosecute Rosenmarkle and he testified as a
prosecution witness. Amick claims that Rosenmarkle had allegedly
told the investigator that he felt squeezed between his friendship with
Amick and what the government wanted, and that the justice system
was not interested in the truth. Over Amick's objection, the district
court, because of concern that Rosenmarkle's statements would
reflect badly on "the justice system," refused to permit the testimony.

Although Rosenmarkle's statements would normally be admissible
to show bias or as prior inconsistent statements, the trial judge has
great discretion to keep otherwise admissible evidence from the jury
under Fed. R. Evid. 403. With this is mind, we cannot say that the dis-
trict court abused its discretion in refusing to admit this testimony.
Moreover, given the other evidence presented at trial as to Rosen-
markle's bias and veracity, any error that did occur was harmless.

Amick also objects to the trial court's allowing the government to
question his friend and business associate, Phillip Hightower, as to
whether Hightower stated that he wanted "his boy," Amick, "to get
off." Hightower's statement obviously goes to bias, and Amick has
not pointed to any prejudicial effect of the statement that the trial
court should have found outweighed its probative value. Amick also
argues that the trial court improperly prohibited questions to High-
tower on re-direct to elicit the fact that he found a government search
of his house abusive and frightening. It is difficult to see the probative
value of Hightower's view of government tactics; whatever coercion
he felt must not have had much effect, considering that Hightower
testified for Amick and against the government. Indeed, the only bias
that this evidence might have suggested was bias *against* the govern-
ment. The trial court did not err in refusing to permit this testimony.

V.

Amick contends that the district court erred in several respects
when instructing the jury. Denial of a requested jury instruction

requires reversal when the offered instruction (1) was correct; (2) was not substantially covered by the court's charge to the jury; and (3) dealt with some point in the trial so important that failure to give the requested instruction seriously impaired the defendant's ability to conduct a defense. *United States v. Guay*, 108 F.3d 545, 550 (4th Cir. 1997). A challenge to a jury instruction provided by the court succeeds only if the instruction, taken as a whole, fails to state the controlling law fairly. *United States v. Fowler*, 932 F.2d 306, 317 (4th Cir. 1991).

Amick claims the district court erred by refusing a proposed jury instruction that, if Amick believed in good faith that he had complied with the tax laws, this required acquittal. This argument fails because the trial judge properly included a willfulness instruction. A good faith instruction was not necessary here in view of the willfulness instruction. *See Cheek v. United States*, 498 U.S. 192, 201 (1991); *Fowler*, 932 F.2d at 317.

Amick next challenges the trial judge's refusal to provide a proposed instruction stating that the "affirmative act" requirement of a willful evasion of tax must be something likely to mislead or conceal. Amick is correct that the mislead or conceal language he championed comes directly from the seminal case of *Spies v. United States*, 317 U.S. 492 (1943). Amick argues that the omission of mislead or conceal language in the judge's instruction, read with the judge's other instructions, would allow the jury to find that the act of influencing witnesses to tell the truth constitutes criminal tax evasion. The instructions do list "influencing witnesses" as possible overt acts, and do not mention that the influence must be likely to conceal or mislead. Any error, however, is harmless. The jury instructions included all of the potential overt acts mentioned in the indictment, and correctly instructed the jury that they need only find that Amick committed one such act. The government presented evidence of numerous acts of tax evasion by Amick. In order to find a district court's error harmless "we need only be able to say with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error." *United States v. Brothers Constr. Co.*, 219 F.3d 300, 311 (4th Cir. 2000); *United States v. Brooks*, 111 F.3d 365, 371 (4th Cir. 1997). We can not say that, in light of all the evidence against Amick,

the jury's decision was substantially swayed by any potential error here.

Amick also asserts that the district court erred by rejecting his proposed instruction listing factors for the jury to consider in determining whether disputed transactions were loans or taxable income. This claim too lacks merit. Simply put, Amick's proposed instruction incorrectly stated the law and the district court correctly stated the law. The "sine qua non of a bona fide non-reportable loan is the taxpayer's own intention to repay." *United States v. Pomponio*, 563 F.2d 659, 662 (4th Cir. 1977). The district judge properly instructed the jury that it must determine if the transactions at issue were loans or income by determining whether Amick had an intention to repay the loans, and that it should consider "all the evidence" in doing do. Amick's proposed instruction merely listed factors for the jury to consider; intention to repay was but one of many factors. Amick's instruction would have permitted the jury to discount intention to repay and place more emphasis on other factors.

In addition, Amick argues that the district court erred by rejecting his proposed instruction that signature authority on a checking account legally differs from ownership of an account. The government introduced evidence at trial that, while Amick claimed to have no bank accounts, he wrote many checks from an account registered to his wife. Amick asserts that he merely possessed signature authority over that account, and did not own it. He contends that this error deprived him of an opportunity to raise the defense that he was not hiding assets.

Assuming that Amick's instruction correctly stated the law, omission of it did not constitute reversible error. The government provided overwhelming evidence that Amick owned the bank account at issue — namely, evidence that he opened the account as a joint account with his wife, received the statements, and called the bank "his bank." Moreover, even if ownership of the account were disputed, the government's evidence overwhelmingly demonstrated other acts of evasion. Given this evidence, we can "say with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by

[any] error." *Brothers Constr.*, 219 F.3d at 311. Accordingly, any error was certainly harmless.

## VI.

Finally, we granted Amick permission to file a supplemental brief on the impact on this case of the Supreme Court's recent decision in *Apprendi v. New Jersey*, 120 S. Ct. 2348 (2000). Amick contends that the district court committed constitutional error by enhancing his sentence on the basis of factual determinations decided by a preponderance of the evidence. Amick asserts that *Apprendi* commands that any fact-finding that increases a sentence must be found by a jury beyond a reasonable doubt. *Apprendi*'s holding, however, applies to "any fact that increases a penalty for a crime above the statutory maximum." *Apprendi*, 120 S. Ct. at 1362-63. The district court did not sentence Amick above the statutory maximum, therefore *Apprendi* does not apply here.

*AFFIRMED*