**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**June 5, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

v.

BOBBY SCOTT ALLEN,

      Defendant - Appellant.

No.05-7000

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF OKLAHOMA**
**(D.C. No. CR-03-00078-001-P)**

---

Jeffrey A. Gallant, Assistant United States Attorney, (Sheldon J. Sperling, United States Attorney with him on the brief) Muskogee, Oklahoma, for Plaintiff - Appellee.

J. Lance Hopkins, Tahlequah, Oklahoma, for Defendant - Appellant.

---

Before **TACHA,** Chief Judge, **HOLLOWAY** and **HARTZ**, Circuit Judges.

---

**HOLLOWAY**, Circuit Judge.

---

      Defendant-appellant Bobby Scott Allen was indicted on a single count of felon in possession of a firearm in violation of 18 U.S.C. § 922(g). Defendant and the prosecution reached an agreement and drafted a stipulation consistent with that agreement calling for

defendant to be found not guilty by reason of insanity and committed for psychiatric treatment. The court refused to accept the stipulation, as we discuss in more detail *infra*, and later ruled that defendant would not be permitted to introduce evidence of insanity at trial. The parties then entered into a conditional plea agreement, under the terms of which Mr. Allen pleaded guilty to the single count against him while reserving the right to bring this appeal from the district court's rulings on the insanity defense. We reverse and remand.

**I**

Mr. Allen had a fairly lengthy history of mental illness which need not be described in detail here. Some five months after his indictment, his attorney filed on his behalf a Motion for Competency and Sanity Evaluation, which the district court granted. Mr. Allen was then evaluated at the Federal Medical Center in Ft. Worth, Texas by Dr. Randall Rattan, a forensic psychologist and an employee of the United States Bureau of Prisons. Dr. Rattan produced a report finding that defendant was mentally ill but not insane and was competent to stand trial. A competency hearing was scheduled before a magistrate judge.

At the time scheduled for the hearing, the parties and the magistrate judge all seemed to agree that the report was not clear. Consequently, the parties jointly asked the magistrate judge to re-set the hearing for a later date to permit Dr. Rattan to prepare a supplemental or amended report to address both the issue of competency and the issue of sanity. Mr. Allen was not sent back to Ft. Worth, but Dr. Rattan made the journey from

Ft. Worth to Muskogee to interview Mr. Allen again.

After conducting additional interviews with Mr. Allen and his family, Dr. Rattan submitted a revised report on February 9, 2004. In the revised report Dr. Rattan concluded that defendant was competent to stand trial. On the separate issue of defendant's sanity at the time of the offense, Dr. Rattan concluded that Mr. Allen was "unable to appreciate the wrongfulness of his alleged offense behavior." Under the Insanity Defense Reform Act of 1984 (IDRA):

> It is an affirmative defense to a prosecution under any Federal statute that, at the time of the commission of the acts constituting the offense, the defendant, as a result of a severe mental disease or defect, was unable to appreciate the nature and quality or the wrongfulness of his acts. Mental disease or defect does not otherwise constitute a defense.

18 U.S.C. § 17(a).

In view of Dr. Rattan's opinion, the parties entered into a stipulation and "Recommendation for Disposition," asking the court to find Mr. Allen not guilty by reason of insanity and to commit him for treatment in a confined facility. The court held a hearing on the stipulation and recommendation, at which time the judge expressed doubt about whether he should follow the recommendation. The judge stated that "at least from a layman's point of view, it appears that the psychiatrist [sic] is influenced at least by the conclusion that the defendant purchased the weapon with the intention of committing suicide." II R. 7. The judge then said that he was not sure that the intent to commit suicide was relevant and asked the parties: "Are you saying because he had the intent to shoot himself . . . therefore, he is insane?" At the conclusion of that session, the

-3-

judge said that he wanted to think the matter over more and would schedule another meeting.

Two days later, the judge issued a "minute order" requesting briefs on one question:

> Does the crime of felon-in-possession require the fact-finder to decide whether the Defendant understood the wrongfulness of using the weapon to commit suicide or only whether the Defendant understood the wrongfulness of possessing the weapon? In particular, the parties are directed to the following cases: *United States v. Garcia*, 94 F.3d 57, 62 (2d Cir. 1996); *United States v. Meader*, 914 F. Supp. 656, 660 (D. Maine 1996); and *United States v. Cooper*, 149 F.3d 1191 [table] [1998 WL 317581] (10th Cir. 1998).

I R. Doc. 32.

After receiving the parties' submissions, the court held another hearing, at which time the judge announced that he would not accept the proposed stipulation and recommendation and that the case would have to be set for trial. In the course of this hearing, the judge expressed doubt about whether insanity can be a defense to a general intent crime, and indicated that he understood *United States v. Brown*, 326 F.3d 1143 (10th Cir. 2003), which the government had cited, to hold that "psychological evidence is limited to specific intent crimes." III R. 2.

The parties then began trial preparations. The defense provided notice of intent to present the insanity defense. The government responded with a motion *in limine* to exclude the expert's evidence. Again citing *Brown*, the government stated that, because the charged crime of felon in possession of a firearm after conviction of a felony "is a

-4-

general intent crime, any testimony regarding a defendant's state of mind in order to negate a specific *mens rea* would be irrelevant." I R. Doc. 40. The court granted the motion the next day without permitting the defendant to respond.

The defendant filed a motion to reconsider, pointing out that the reliance by the prosecution and the court on *Brown* was misplaced as *Brown* did not address the insanity defense but a separate issue involving proffered evidence of mental illness. The court granted the motion to reconsider in part, indicating that a final decision on admission of Dr. Rattan's testimony would come at trial. In that order, the judge also ruled that the doctor would not be permitted to testify that defendant had told him that he had acquired the gun with the intention of committing suicide. Thus, the government's motion *in limine* was still granted in part. I R. Doc. 45.

A final hearing of the issue occurred on the day scheduled for trial, at which Dr. Rattan testified (before a jury would have been impaneled) and was cross-examined by the prosecutor, with additional questions from the court. The doctor consistently stated his opinion that defendant was incapable of understanding the wrongfulness of his actions due to a severe mental disease. (Under Fed. R. Evid. 704(b), an expert may not state such an opinion on the ultimate issue, this being the single exception to the general rule, applicable since 1972, that such opinions are admissible.)

Following Dr. Rattan's testimony, the court heard arguments of counsel one last time on the issue. Defendant's attorney contended that *Brown* was irrelevant to the issue because the defendant in that case had not attempted to raise an insanity defense. Counsel

-5-

also pointed out that our opinion in that case cited the statutory principle that insanity is an affirmative defense to prosecution under any federal statute, and so that the debate about specific intent crimes versus general intent crimes was likewise without relevance to the issue before the district court.

The government's argument to the district court was basically the same argument made to this court on appeal. Conceding that insanity may be a defense to a general intent crime in some circumstances, the prosecutor suggested that in this case the defense would apply only if the defendant did not know that the object in his possession was a gun. (This in spite of the fact that Dr. Rattan had testified that such a severe misperception would amount to a failure to know the nature and quality of the act, a different basis for the insanity defense based on the statutory language.) The prosecutor asserted that whether defendant "knew it was wrongful or not is irrelevant." The prosecutor then contradicted his opening concession and said that insanity is not a defense to a general intent crime.

The trial judge then suggested that the insanity defense would not be allowed. The judge said that the "best example" to explain his ruling was that individuals who have prior convictions do not always realize that when they buy a rifle for hunting, they have done something wrong. Thus, the judge equated the statutory defense – that defendant could be found not guilty by reason of insanity because "*as a result of a severe mental disease or defect*, [the defendant] was unable to appreciate . . . the wrongfulness of his acts" – with the familiar maxim that "ignorance of the law is no excuse."

After a short recess, the judge returned to the bench and ruled, as he had just suggested that he would, that Dr. Rattan would not be permitted to testify. Again the judge indicated that he was persuaded by *United States v. Brown*, quoting from that opinion the ruling that "'evidence of a defendant's impaired volitional control or inability to reflect on the consequences of his conduct' is not admissible." V R. at 40 (quoting *Brown*, 326 F.3d at 1147). The judge then said:

> After hearing Doctor Rattan's testimony this Court finds as follows: One, defendant is charged by way of indictment . . . with the crime of felon in possession of a firearm in violation of 18 U.S.C. Section 922(g)(1), a general intent crime. Two, the Insanity Defense Reform Act, 18 U.S.C. Section 17, quote, "bars the introduction of evidence of a defendant's mental disease or defect to demonstrate that a defendant lacked substantial capacity to control his actions or reflect upon the consequences or nature of his action." That's [*United States v. Brown*] at page 1146 and it cites [*United States v. Worrell*, 313 F.3d 867, 872 (4th Cir. 2002)]. Three, the testimony of Doctor Rattan unequivocally states defendant was aware he purchased the weapon named in the indictment along with ammunition for the weapon.
>
> Therefore, this Court finds that Doctor Rattan's testimony, which clearly addresses defendant's mens rea regarding purchase of the firearm and ammunition, is not relevant since we're dealing solely with a general intent crime. Accordingly this Court will not allow Doctor Rattan to testify before the jury.

V R. 40-41.

## II

We review rulings on admission and exclusion of evidence for abuse of discretion. *See, e.g., United States v. Brown*, 326 F.3d 1143, 1146 (10th Cir. 2003). Although the abuse of discretion standard is deferential, abuse is shown where the decision was made

based upon a mistaken view of the law. *See, e.g., United States v. Messner*, 107 F.3d 1448, 1454 (10th Cir. 1997).

In this case we conclude that the district court erred in holding that the insanity defense could not be presented to the jury. We further conclude that the district court erred in holding that the proffered expert testimony "clearly addresses defendant's mens rea" and so is irrelevant in the prosecution of this general intent crime. And finally, "[w]e are convinced that the proof was sufficient, given reasonable and proper interpretation of the statute, for the trier of fact to find that the defendant had shown by clear and convincing evidence that, as a result of a severe mental disease or defect, [he] was not guilty by reason of insanity . . . ." *United States v. Denny-Shaffer*, 2 F.3d 999, 1013 (10th Cir. 1993).

The government argues on appeal, *inter alia*, that Dr. Rattan's testimony was irrelevant "because it did not pertain to an element of the offense." Brief of Plaintiff/Appellee at 10. This appears to be the same point that the district court made in saying that *mens rea* is irrelevant to a general intent crime. However, insanity is, as the statute expressly says, an affirmative defense. The fundamental concept of an affirmative defense is that it does not negate an element of the adversary's case. We think that this argument merits no further discussion.

The government then argues that Dr. Rattan's testimony was correctly held to be irrelevant because his opinion "appeared" to be that defendant was unable to appreciate the wrongfulness of his conduct because of his intent to commit suicide and because

"[t]his reasoning is essentially a statement on defendant's inability to reflect on the consequences of his conduct" which is "prohibited" by *Brown*. We find the first contention to be based on an oversimplified reading of the psychologist's report, and therefore an insufficient basis for holding the evidence to be irrelevant. As to the second contention, we think we should not adopt counsel's characterization of what the report "essentially" states over the report itself.

The government next contends that "[t]o allow a defendant claiming insanity to put forth a defense that is otherwise unavailable to a typical defendant, would be to greatly expand the scope of the insanity defense." However, it is axiomatic that the insanity defense is one not available to a "typical" defendant. The reference in this argument to the district judge's observations that some persons convicted of felon in possession were (the judge believed) honestly unaware of the legal impediment to their possession of firearms does not provide any support for the argument. This hypothetical defendant is one who only fails to appreciate the wrongfulness of his conduct due to ignorance of the law. Ignorance of the law, however, is distinguished from the *statutory* defense that Mr. Allen was unable to appreciate the wrongfulness of his conduct *due to a severe mental illness*.[1]

---

[1]The government's brief in passing contends that Dr. Rattan's report did not say that defendant suffered from a "severe" mental illness. If that were the evidence, it would seem to be insufficient under the IDRA's definition. But reading the entire report in context leaves us with considerable doubt that the omission of the word is an indication that the report's author believed that the defendant's mental illness was not severe. And Dr. Rattan's testimony before the court resolves the matter because he said at least three times, V R. at 5,7, & 19, that defendant's illness was severe; in addition, his responses to

Our decision today is not at all inconsistent with our holding in *United States v. Brown*, 326 F.3d 1143 (10th Cir. 2003), which simply has no bearing on this issue. In view of the confusion demonstrated in the course of this case, however, it may be beneficial to further explain what *Brown* did hold and the area of law which that case did not address. As defense counsel pointed out in the district court, insanity is an affirmative defense applicable, by statute, to prosecution "under any Federal statute." 18 U.S.C. § 17 (a). The IDRA narrowed but certainly did not eliminate the insanity defense.

As we said in *Brown*, before passage of IDRA we had applied an insanity test which provided that a defendant was not criminally responsible if, due to mental disease or defect, "he lacked substantial capacity either to appreciate the wrongfulness of his conduct *or* to conform his conduct to the requirements of the law." *Denny-Shaffer*, 2 F.3d at 1003 n.1. The IDRA eliminated the second prong of that statement of the insanity defense. *Id.*

As noted, IDRA, in addition to narrowing the definition of the affirmative defense of insanity, provided that "[m]ental disease or defect does not otherwise constitute *a defense*." 18 U.S.C. § 17(a) (emphasis added). The federal courts in cases like *Brown* were faced with the issue whether evidence of mental illness which was not sufficient to establish insanity could be relevant under other circumstances. In particular, in *Brown* and cases cited therein defendants attempted to use evidence of mental illness not as an

---

at least two questions which used the word "severe," questions posed by the same government attorney, clearly implied the same.

-10-

affirmative defense subject to the standard of section 17(a) but only to challenge the government's proof of the *mens rea* of the crimes charged. As noted with approval in *Brown*, several circuits had held that, at least in some circumstances, a defendant could use evidence of mental illness to negate the *mens rea* element, but only of specific intent crimes. And in *Brown* our court joined those other circuits while, however, finding in that particular case that the defendant's offer of proof was insufficient for its stated purpose and so not admissible. 326 F.3d at 1147-48.

To avoid confusion it is essential to recognize and understand the context of *Brown* and similar cases. As Mr. Allen's counsel has maintained throughout this case, the affirmative defense of insanity was simply not at issue in *Brown*. And language in that opinion limiting the use of evidence of mental illness to specific intent crimes, as with most of the analysis of the case, has application only where the defendant is *not* raising the affirmative defense but instead is challenging the government's proof of the element of specific intent.

Defendant also contends that the district court abused its discretion by refusing to accept the parties' stipulation and recommendation, as described *supra*. Because the district judge's decision was based on an error of law as we have just discussed, an abuse of discretion has been shown. However, under the specific circumstances here, it is far from clear that this court can supply any remedy. We are content to hold that this issue may be reconsidered by the district court on remand. In light of the fact that the rejection of the stipulation and recommendation and the government's change of position were

both based largely if not entirely on mistaken legal analysis, with the result that defendant has now served most of the term of confinement to which he was sentenced and still faces the possibility of indefinite further confinement for treatment, the decision appears to have been most unfortunate. Nevertheless, we are unwilling to decree specific enforcement of the agreement. We think instead that the district court should address the matter, should defendant choose to raise it below, in light of this opinion and after permitting the parties to state their views.

For the guidance of the district court on remand of this matter, we address one additional point. As noted, before the district judge finally ruled that Dr. Rattan would not be allowed to testify at all, he had ruled that the doctor could not testify that the defendant had told him that he had purchased the gun with the intent of committing suicide. We agree that proof of such a motive is not a legal defense to this prosecution. Nevertheless, we hold that this ruling – in the context in which it was made – was error. We are concerned that the ruling would unfairly and materially impair the defendant's ability to present his only defense. This infringement of the defendant's basic right to defend himself would occur *if*, as we think likely enough to be taken into account, the expert relied on this fact in forming his opinion on the defendant's mental state.

At trial, if Dr. Rattan testifies, defendant's counsel should be free to explore this subject provided that, and on a showing that, this fact was relevant to Dr. Rattan in forming his opinion. We are unwilling to make a ruling based on our reading of the expert's report and our understanding of how the intent to commit suicide affected the

-12-

expert's opinion, when a more complete explication of his views at trial might show that our understanding was mistaken. Under Fed. R. Evid. 704(b), Dr. Rattan's opinion on the ultimate issue is inadmissible. Thus, the presentation of this defense will be difficult enough without any unnecessary additional impediments.

Accordingly, the judgment and sentence against the defendant entered on his conditional plea of guilty must be reversed and the cause remanded for further proceedings consistent with this opinion.

IT IS SO ORDERED.