FILED
United States Court of Appeals
Tenth Circuit

January 28, 2011

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENNTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

JAMES LESLIE GOODMAN,

Defendant-Appellant.

No. 09-5087

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA
(D.C. NO. 4:08-CR-00110-CVE-1)**

---

J. Lance Hopkins, Tahlequah, Oklahoma for Appellant.

Janet S. Reincke, Assistant United States Attorney (Thomas Scott Woodward, Acting United States Attorney, Northern District of Oklahoma, with her on the brief) Office of the United States Attorney, Tulsa, Oklahoma for Appellee.

---

Before **BRISCOE**, Chief Judge, **McWILLIAMS**, Senior Judge, and **TYMKOVICH**, Circuit Judge.

---

**TYMKOVICH**, Circuit Judge.

---

James L. Goodman is an Iraq War veteran who, several years after returning home from the war, robbed at gunpoint three convenience stores in the span of eight days. He attempted to rob a fourth when police finally apprehended

him.  After a trial at which he offered insanity as his only defense, Goodman was convicted of multiple robbery and firearms offenses.  The district court sentenced him to 82 years imprisonment.

Goodman contends the district court erred at trial by (1) limiting lay witness testimony about his sanity to what the witnesses observed immediately before and after the crime, (2) limiting lay witnesses to non-opinion testimony, and (3) allowing the prosecution to use hypothetical facts to elicit expert diagnoses of Post Traumatic Stress Disorder (PTSD).  Goodman also challenges the constitutionality of the mandatory sentencing provisions of 18 U.S.C. § 924(c).

Having jurisdiction pursuant to 28 U.S.C. § 1291, we conclude the district court erred in limiting the testimony of the lay witnesses.  But the district court did not err in allowing the government to use hypothetical facts to elicit expert diagnoses of PTSD.  Because the restrictions on lay testimony were not harmless, we REVERSE Goodman's conviction and REMAND for a new trial.  We do not address the constitutionality of 18 U.S.C. § 924(c).

## I.  Background

Goodman enlisted in the Army in 2003 and in early 2005 began a tour of duty in Iraq.  While there, he engaged in intense combat, observed traumatic injuries of fellow soldiers and civilians, and witnessed a number of deaths.  As a

result of these experiences and within months of arriving in Iraq, he suffered a mental breakdown while on active combat duty.

The Army provided psychiatric care in both Germany and at Walter Reed Army Medical Center in Washington, D.C. Eventually, he was transferred to the Army base at Fort Stewart, Georgia, where he underwent extensive psychiatric and mental health treatment and reunited with his wife and three children. For a time following his release from Fort Stewart, Goodman engaged in out-patient psychiatric treatment. Once it became clear that his mental condition was permanent, however, the Army honorably discharged him in May, 2005.

Goodman by this time was living in Oklahoma, with his family. But his mental condition continued to be a problem. Goodman displayed erratic and unusual behavior and showed an inability to take care of himself or his children. He also showed an inability to function well in crowds. After three years of trying to cope with her husband's mental condition, Goodman's wife divorced him in March, 2008. After the divorce decree was finalized, Goodman lost custody of his children, who moved to live with their mother. On March 16, 2008, a day after the children moved, Goodman committed the first of four armed robberies of convenience stores. He robbed or tried to rob three more convenience stores on March 22, 23, and 24.

Goodman was arrested and prosecuted, and at trial he offered insanity as his only defense. The trial court allowed the insanity defense to go to the jury but

permitted the lay witnesses to testify about only what they had observed in the days immediately before and immediately following the robberies. As we describe in more detail below, Goodman sought to show examples of his erratic behavior leading up to the robberies, and elicit lay opinion testimony that he appeared to be mentally ill. Goodman was convicted, and the trial court sentenced him to 82 years imprisonment.

## II. Discussion

Goodman contends the district court made two errors regarding lay testimony—limiting it temporally and to non-opinion testimony. He also argues the district court erred in allowing the prosecution to use hypothetical fact patterns to elicit expert diagnoses of PTSD.

### A. *Temporal Limitations on Lay Witness Testimony*

In a pretrial order, the district court ruled that Goodman could call his father, his divorce lawyer, and his minister as witnesses, but limited their testimony to Goodman's behavior during the days immediately surrounding the robberies. Goodman contends the district court erred in temporally limiting the lay testimony, and he further argues the limitations prevented him from showing other manifestations of his mental diseases and from contrasting his pre- and post-combat behavior. Goodman asserts his insanity defense suffered as a result. We agree.

We first turn to the standard of review. The government contends Goodman failed to preserve the issue for appeal and that we should therefore review for plain error only. *United States v. Gonzalez-Huerta*, 403 F.3d 727, 732 (10th Cir. 2005). We have ruled that "a motion in limine may preserve an objection when the issue (1) is fairly presented to the district court, (2) is the type of issue that can be finally decided in a pretrial hearing, and (3) is ruled upon without equivocation by the trial judge." *United States v. Mejia-Alarcon*, 995 F.2d 982, 986 (10th Cir. 1993). "Once the court makes a definitive ruling on the record admitting or excluding evidence, either at or before trial, a party need not renew an objection or offer of proof to preserve the claim of error for appeal." FED. R. EVID. 103(a).

In his pretrial brief, Goodman notified the district court that his father, pastor, and divorce attorney would testify about the deterioration of his personality, mental stability, and emotional state during the months leading up to the robberies. Goodman's counsel again notified the court at the pretrial conference the people he expected to call as witnesses. He also provided the district court the content of some of their testimony, including among other things, Goodman's living in a filthy apartment surrounded by dog feces, his fleeing the crowd at a college football game for fear that someone might be a suicide bomber, and his experiencing a flashback and diving to the ground at the sound of an incoming call on a policeman's hand radio. Specifically, Goodman's

parents would testify about their observations of him before he went to Iraq and after he returned home, despite his treatment: how he overslept, behaved robotically, and lost touch with reality. The pastor would testify about how different Goodman behaved and looked in 2008 compared with his behavior in years prior.

Goodman thus fully proffered the essence of the proposed lay testimony prior to trial. The district court ruled unequivocally in a written order, and Goodman's counsel obviously was restricted in what testimony he could elicit from these witnesses at trial. We are therefore satisfied Goodman properly preserved his objections for appeal. Consequently, our review "on admission and exclusion of evidence [is] for abuse of discretion." *United States v. Allen*, 449 F.3d 1121, 1125 (10th Cir. 2006). "Although the abuse of discretion standard is deferential, abuse is shown where the decision was made based upon a mistaken view of the law." *Id*.

Our cases have been generous in extending broad latitude to lay testimony in insanity trials. The leading precedent is *United States v. Austin*, 933 F.2d 833 (10th Cir. 1991), where we concluded that "when insanity is an issue *all evidence of mental difficulties, either before, after, or on the date of the alleged offense is admissible*." *Id*. at 842 (emphasis added). In *Austin*, we considered the exclusion of a defendant's eight-year-old medical reports, which the defense hoped would help show the defendant's insanity. The district court excluded them as too old to

be relevant. We reversed, clarifying that we have never "placed a temporal limit on relevant proof of mental illness." *Id.* Instead, mental health evidence can retain its relevance "in view of its frequently long duration, its possible chronicity as suggested by the tendered exhibits and its recurrent manifestations within the common knowledge" of lay witnesses. *Id.; see also Davis v. United States*, 364 F.2d 572, 574–75 (10th Cir. 1966) ("The instruction . . . is . . . too restrictive in that it limits the accused's evidence as to her mental condition to the time of the commission of the crimes. . . . Such evidence may instead relate to conditions existing both before and after the crime.").

While we offer no general rule concerning the point at which evidence of insanity becomes too stale to be relevant, the excluded evidence in this case did not cross the line. Unlike the eight years of behavior at issue in *Austin*, Goodman's excluded evidence at most would have been only three years old, and part of a continuous pattern that developed from the beginning of his psychiatric treatment up to the time of the robberies. The proffered evidence was based on the direct observations of close family and friends, and is the type of evidence that can bolster expert mental health testimony. Based on our reading of *Austin*, the district court erred by limiting the temporal scope of Goodman's lay witnesses.

The government urges us to nonetheless affirm on the grounds the district court's error was harmless. We cannot do so. First, by not allowing Goodman to

show a number of manifestations of his insanity, some of which occurred just a few weeks and months prior to the robberies, the district court compromised Goodman's ability to persuade the jury he was legally insane at the time he committed the crimes.

Secondly, the temporal limitation did not simply prevent Goodman from introducing a few anecdotal facts. It also likely affected how Goodman's counsel crafted his entire defense theme and strategy, prepared his witnesses, and questioned them at trial. Here, the exclusion handicapped defense counsel from the outset of the case. We therefore agree with Goodman the exclusion "deprived [him] of important evidence relevant to a sharply controverted question going to the heart of [his] defense," and that therefore his "substantial rights were affected and he is entitled to a new trial." *See United States v. Yarbrough*, 527 F.3d 1092, 1103 (10th Cir. 2008).

In sum, the district court should have allowed Goodman's witnesses to testify about their observations of his behavior in the three years leading up to the crimes.

### B. Lay Witness Opinions

Goodman also contends the district court erred in relying on Federal Rule of Evidence 704(b) to limit lay witnesses to non-opinion testimony only. We agree.

The parties again differ on our standard of review.  At oral argument, the government conceded the district court erred, but contends Goodman failed to preserve this issue for appeal and thus we should review only for plain error.  The record shows the contrary.  Goodman's counsel advocated specifically for lay witness opinions in a detailed pretrial memorandum that provided analysis and case citations.  R. Vol. 1, Doc. 64 at 5.  But the district court, relying on Federal Rule of Evidence 704(b), ordered the following:

> [D]efense counsel must limit his inquiry of any lay witnesses to observations of defendant's behavior only; no witness will be permitted to state an opinion or inference as to whether the defendant did or did not have the mental state of condition constituting an element of the crime charged or of a defense thereto.  Such ultimate issues are matters for the trier of fact alone.

R., Vol. 1, Doc. 66 at 2 (emphasis in original).  The court thus made it plain that Goodman's witnesses would be restricted in the scope of their testimony.  Goodman through his motion in limine thus preserved this issue for appeal, *see Mejia-Alarcon*, 995 F.2d at 986, and we review de novo the legal question of whether the Federal Rules of Evidence impose a strict prohibition against lay witnesses from testifying as to the ultimate issue of sanity.  *United States v. Johnson,* 584 F.3d 995, 998 (10th Cir. 2009).

The Federal Rules of Evidence permit lay witnesses to testify in the form of opinions or inferences given three general limitations.  The opinions should (1) be "rationally based on the perception of the witness," (2) be "helpful to a clear

understanding of the witness' testimony or the determination of a fact in issue," and (3) "not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." FED. R. EVID. 701. Rule 704(a) further provides that opinions and inferences "otherwise admissible" are "not objectionable" because they embrace "an ultimate issue to be decided by the trier of fact." FED. R. EVID. 704(a).

The Federal Rules of Evidence do not, therefore, categorically prohibit lay witnesses from offering opinion testimony regarding the defendant's mental state. As the Second Circuit put it, the admission of lay opinion testimony is "a sharp departure in theory, if not in practice, from the common law. . . . Since neither Rule 701 nor Rule 704(a) limits the subject matter of lay opinion testimony, there is no theoretical prohibition against allowing lay witnesses to give their opinions as to the mental states of others." *United States v. Rea*, 958 F.2d 1206, 1214–15 (2d Cir. 1992) (citing Jack B. Weinstein & Margaret A. Berger*, Weinstein's Federal Evidence* ¶ 701[02], pp. 701-19 to 701-21 (1991) *and* 2 S. Saltzburg & M. Martin, *Federal Rules of Evidence Manual* 1 (5th ed. 1990)); *see also United States v. Hauert*, 40 F.3d 197, 201 (7th Cir. 1994) ("[A] lay witness may, in appropriate circumstances, give an opinion on an 'ultimate issue.'"); *United States v. Baur*, No. 91-1868, 1993 WL 339707, at *3 (6th Cir. Sept. 1, 1993) (noting that because witness was not testifying as an expert, "his lay opinion was not barred by Rule 704(b)).

Indeed, Rule 704(a) specifically allows testimony in the form of an opinion that "'embraces an ultimate issue to be decided by the trier of fact.'" *United States v. Awadallah*, 401 F. Supp. 2d 308, 313 (S.D.N.Y. 2005) ("The Government correctly argues that the fact that a lay witness's opinion testimony might go to an ultimate issue in this case does not, by itself, mean that it must be precluded."); *Weinstein's* ¶ 704.02, pp. 704-5 (2001) ("Rule 704 permits testimony in the form of an opinion or inference about an ultimate issue, and abolishes the common-law ultimate fact rule barring such evidence."). As we said in *United States v. Leroy*, 944 F.2d 787, 789 (10th Cir. 1991), "Lay opinion of a witness as to a person's sanity is admissible if the witness is sufficiently acquainted with the person involved and has observed his conduct" and has personal knowledge "regarding the person's unusual, abnormal or bizarre conduct."

We would have a quite different result if the question were the scope of expert opinion testimony. Rule 704(b) provides an exception to Rule 704(a) and expressly forbids *experts* from offering opinions as to the state of mind of a criminal defendant if that mental state is an element of the crime of which they are accused:

> No expert witness testifying with respect to the mental state or condition of a defendant in a criminal case may state an opinion or inference as to whether the defendant did or did not have the mental state or condition constituting an element of the crime charged or of

a defense thereto. Such ultimate issues are matters for the trier of fact alone.

FED. R. EVID. 704(b). Rule 704(b) does not, however, forbid lay witnesses from offering opinion testimony. *Weinstein's Federal Evidence*, ¶ 704.06[1], pp. 704-18 to 704-19 (2008) ("Rule 704(b) applies only to bar expert testimony on a defendant's mental state, not lay testimony."). Indeed, the rule's plain text limits its application to experts only. *See Rea*, 958 F.2d at 1215 ("[I]f the drafters had intended that the last sentence be read as applying to lay witnesses as well as expert witnesses, there would have been no need to include the word 'expert' in the first sentence."). We recognize that Rule 704(b)'s last sentence ("Such ultimate issues are matters for the trier of fact alone") could be understood to bar both lay and expert witness opinions, but the sentence cannot be read without referring to the one preceding it, which is clearly directed only at expert witnesses. *See id.* ("[The second sentence's] reference to '[s]uch' issues makes it unintelligible without reference to the first sentence."). Moreover, "the legislative history of subdivision (b), which was added in 1984, indicates that the drafters and Congress focused only on problems with regard to expert witnesses, not lay witnesses." *Id.*; *see also* S. Rep. No. 98-225, 98th Cong., 2d Sess. 230 (1983), *reprinted in* 1984 U.S. Code. Cong. & Admin. News 3182, 3412 ("The purpose of this amendment is to eliminate the confusing spectacle of competing

expert witnesses testifying to directly contradictory conclusions as to the ultimate legal issue to be found by the trier of fact.").

We therefore find the district court erred in relying solely on Rule 704(b) to limit lay witnesses to non-opinion testimony only. We emphasize, however, that the district court still has the discretion to exclude lay witness testimony for other reasons contemplated by the Federal Rules of Evidence, among them (1) Rule 701 (whether the testimony is rationally based on perceptions of the witness and would be helpful to the trier of fact); and (2) Rule 403 (whether the evidence is cumulative or its helpfulness is outweighed by unfair prejudice). *See Rea*, 958 F.2d at 1216; *Hauert*, 40 F.3d at 202 (recognizing Rule 704(a) allows lay witness testimony as to the ultimate issue but affirming the district court's rejection of that testimony because it was not helpful to the jury, as required by Rule 701(b)). Thus, the lay witnesses would not have carte blanche to opine on Goodman's appearance or state of mind at the time of the crimes if they have no first-hand knowledge for such an opinion.

Nor can we say on this record the district court's error in limiting lay witnesses to non-opinion testimony was harmless. As with the temporal limitations, this error likely affected how Goodman conducted his entire defense, from witness preparation to direct examination. For example, Goodman's father had contact with his son on the day of one of the robberies and may have been in a position to offer opinion testimony. Even so, the district court is free to review

the admissibility of the proffered evidence in light of the limitations mentioned above or other reasons offered by the parties on remand.

### C. *Hypothetical Questions*

Goodman also argues the district court erred in allowing the prosecutor to pose a series of hypothetical situations in order to elicit expert diagnoses of PTSD. The parties once again disagree on the standard of review. Goodman objected generally to the testimony, but not specifically on the grounds that it would violate Federal Rule of Evidence 704(b), which is his argument on appeal. But regardless of the standard of review, the district court did not err.

Goodman relies on three cases to support his argument that parties may not pose hypothetical situations to "elicit the opinion of an expert on the ultimate issue of fact that was for the jury alone to decide." *United States v. Boyd*, 55 F.3d 667, 669 (D.C. Cir. 1995). But none of those cases is comparable to the facts here. In each, the party posing the hypothetical situations attempted to bring forth expert opinion as to the very mental state at issue in the case—the defendant's mens rea when he committed the crime. For example, in *Boyd*, the expert testified the defendants had the "intent to distribute" crack cocaine. *Id.* Similarly, in *United States v. Dennison*, 937 F.2d 559 (10th Cir. 1991), the defendant asked his expert to offer an opinion as to whether a hypothetical individual suffering from borderline personality disorder who was under the influence of drugs and alcohol could form the specific intent necessary to commit

the alleged crime. *Id.* at 565–66. Finally, in *United States v. Manley*, 893 F.2d 1221 (11th Cir. 1990), the defendant's attorney asked an expert whether a hypothetical person would "be able to appreciate the nature and quality or the wrongfulness of their actions," language that tracked almost exactly the text of the insanity statute. *Id.* at 1225.

In contrast, other cases have found hypothetical questions mirroring the fact patterns of the trial case permissible when the answering testimony still allows the fact finder to make an additional inference as to whether the defendant had the mental state or condition constituting an element of the crime charged. *See United States v. Dixon*, 185 F.3d 393, 401 (5th Cir. 1999); *United States v. Levine*, 80 F.3d 129, 134–35 (11th Cir. 1996); *United States v. Brown*, 32 F.3d 236, 239–40 (7th Cir. 1994).

Goodman's case aligns more with these latter cases. The government did not ask the experts to give their opinions as to Goodman's legal sanity. Rather, the prosecution posed hypothetical facts that mirrored the charged robberies and asked the experts whether the hypothetical robber's actions were consistent with the behavior of someone with PTSD. The jury still needed to make an additional inferential step to determine whether or not Goodman was legally insane.

As we have explained, "Rule 704(b) only prevents experts from expressly stating the final conclusion or inference as to a defendant's mental state. The rule does not prevent the expert from testifying to facts or opinions from which the

jury could conclude or infer the defendant had the requisite mental state." *United States v. Richard*, 969 F.2d 849, 854–55 (10th Cir. 1992). As the D.C. Circuit noted, "It is only as to the last step in the inferential process—a conclusion as to the defendant's actual mental state—that Rule 704(b) commands the expert to be silent." *United States v. Dunn*, 846 F.2d 761, 762 (D.C. Cir. 1988). Here, the jury still needed to make the final logical step in concluding that because Goodman did not seem to display the symptoms of PTSD, he was therefore sane at the time he committed the robberies.

Accordingly, the district court did not err by allowing the government to use hypothetical fact patterns to elicit expert diagnoses of PTSD.

### III. Conclusion

We conclude the district court erred by placing temporal limits on lay witness testimony and by limiting lay witnesses to non-opinion testimony. We also find the district court did not err in allowing the government to use hypothetical facts to elicit expert diagnoses of PTSD. We therefore REVERSE Goodman's conviction and REMAND for a new trial. Because we are remanding for a new trial, we do not address the constitutionality of the mandatory sentencing provisions of 18 U.S.C. § 924(c). Motions by Appellant to file under seal the principal brief and reply brief are GRANTED. The motion by Appellee to file under seal the answer brief is also GRANTED.