FILED
United States Court of Appeals
Tenth Circuit

November 29, 2011

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

LINDA ABRAMSON-SCHMEILER,
a/k/a Linda J. Abramson, a/k/a Linda
Abramson, a/k/a Linda A. Schmeiler,
a/k/a Linda Schmeiler,

Defendant-Appellant.

No. 11-1125
(D.C. No. 1:09-CR-00359-REB-1)
(D. Colo.)

---

**ORDER AND JUDGMENT**[*]

---

Before **TYMKOVICH**, Circuit Judge, **BRORBY**, Senior Circuit Judge, and
**EBEL**, Circuit Judge.

---

A jury convicted Linda Abramson-Schmeiler of five counts of violating

26 U.S.C. § 7206(1). She appeals from her convictions. We have jurisdiction

pursuant to 28 U.S.C. § 1291, and we affirm.

---

[*]     After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and
collateral estoppel. It may be cited, however, for its persuasive value consistent
with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## Background

Defendant was charged with five counts of filing a false tax return in violation of 26 U.S.C. § 7206(1). The charges were based on her alleged failure to report all of the income she received from her business of "diversionary sales" (purchasing and then reselling large quantities of hair-care products). The government alleged that she falsely underreported her business's gross receipts, or sales, by more than $1.4 million during the years 2003, 2004, and 2005, which then resulted in her falsely underreporting her personal income for the same amount. In support of these allegations, the government introduced evidence at trial through defendant's bank records and tax returns. These records showed that the gross-receipts figures on defendant's taxes were significantly lower than the gross-receipts amounts reflected in her bank records.

At trial, defendant's main defense was that she did not intentionally underreport her sales and income. She admitted that she had failed to report payments her business received for selling hair-care products. But she asserted that many of her diversionary sales were in cash and unrecorded and that she lost money or broke even on many of these transactions. She testified that when she did not make money on a transaction, she would consider it a "wash" and she would not report the transaction to her accountant for reporting on her income tax returns. Aplt. App., Vol. 5 at 1305-06. She testified that she did not knowingly fail to report gross receipts on her taxes.

Agent R. Jonathan Lynch, a certified public accountant who works for the Internal Revenue Service, testified for the government. He testified that in order for defendant to account for more than $1.4 million in unreported sales, she would also have had to underreport her purchases by $1.4 million so that the net effect on her profits (and taxable income) was zero. Agent Lynch testified that after reviewing her tax returns and bank records, he could find no evidence that she underreported the amount of hair-care products she purchased, nor could he find that she had an additional $1.4 million to spend.

At trial, defendant claimed to have an additional off-the-books source of funds that was not included in the records obtained by the government. She testified that she found $1 million in cash and $80,000 in bonds in her parents' house after her mother died. She testified that she did not put this money in the bank because she "just didn't want to," Aplt. App., Vol. 6 at 1456, so she kept it in a box in her house. She testified that she used the cash from the box to pay for the hair-care products.

The jury convicted defendant on all counts. She was sentenced to thirty-six months' imprisonment on each count, to be served concurrently, and ordered to pay restitution. This appeal followed.

## Discussion

Defendant challenges her convictions on three grounds: 1) the district court erred in precluding important lay witness testimony; 2) the district court

-3-

erred in refusing to give defendant's good-faith jury instruction; and 3) the government committed prosecutorial misconduct throughout the trial.

1. Exclusion of Lay Witness Testimony

The evidentiary ruling at issue here took place during testimony by defendant's tax accountant, Richard Powell. He prepared defendant's tax returns for the years she was charged with failure to report all of her income. The government called Mr. Powell to testify in support of its case and he was not designated as an expert at trial.

During cross-examination of Mr. Powell, defense counsel asked to approach the bench. The following exchange then took place:

> [Counsel]: . . . The one issue I want to approach on, when I conducted an interview of this witness his opinion was if the payments were underreported that he didn't believe that she did it on purpose, and I know that's an [ultimate] issue opinion but under Rule 704 that's not precluded. There is some language about experts but he has not been qualified as an expert . . . .
>
> Court: No one, expert or any other witness, may express an opinion. It's precluded expressly under [Federal Rule of Evidence] 704, and it's generally precluded through a lay fact witness such as Mr. Powell.

Aplt. App., Vol. 2 at 539.

Defendant argues that the district court committed reversible error when it relied on Rule 704 to preclude this important lay witness testimony that went to the heart of her defense. We review for abuse of discretion a district court's

-4-

decision on the admissibility of evidence. *United States v. Leonard*, 439 F.3d 648, 650 (10th Cir. 2006).

Although the district court's ruling is not a model of clarity, in prohibiting Mr. Powell from testifying that he did not believe defendant underreported her income on purpose, the court appears to be suggesting that there is a categorical bar against opinion testimony on ultimate issues. But there is only one categorical bar to a witness offering an opinion on an ultimate issue and that involves expert testimony.

Rule 704(b) expressly precludes an *expert* from offering an opinion about the ultimate issue of a defendant's mental state in a criminal case, explaining that "[s]uch ultimate issues are matters for the trier of fact alone." Fed. R. Evid. 704(b). Rule 704(a), however, explains that all other opinion testimony that is otherwise admissible "is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." Fed. R. Evid. 704(a).

In addition, there is no bar to this type of testimony in Federal Rule of Evidence 701, which governs opinion testimony by lay witnesses. That rule provides:

> If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inference is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Fed. R. Evid. 701. This issue came up in a recent case where the district court excluded all lay witness testimony about a defendant's mental state. In reversing the district court's decision, we explained that: "The Federal Rules of Evidence do not . . . categorically prohibit lay witnesses from offering opinion testimony regarding the defendant's mental state." *United States v. Goodman*, 633 F.3d 963, 968 (10th Cir. 2011).

We conclude that the district court expressed a mistaken view of the law and therefore abused its discretion in excluding this opinion testimony for the reasons expressed at trial. *See United States v. Allen*, 449 F.3d 1121, 1125 (10th Cir. 2006) ("Although the abuse of discretion standard is deferential, abuse is shown where the decision was based on a mistaken view of the law."). But that does not end our inquiry. Although the government does not concede that the district court erred, it argues that any error by the district court was harmless. We agree.

"A non-constitutional error, such as a decision whether to admit or exclude evidence, is considered harmless unless a substantial right of a party is affected." *United States v. Burgess*, 576 F.3d 1078, 1100 (10th Cir. 2009) (quotations and brackets omitted). "An error affecting a substantial right of a party is an error which had a substantial influence on the outcome or which leaves one in grave doubt as to whether it had such an effect." *Id*. (quotations omitted). When making the harmless error determination, "[w]e review the record as a whole."

-6-

*Id.* (quotations omitted). Given these considerations and our review of the record, we conclude that the exclusion of Mr. Powell's opinion testimony was harmless error.

Defendant provided ample testimony in support of her good faith defense. Defense counsel elicited testimony on cross-examination that Mr. Powell never explained to defendant how the IRS calculates cost of goods sold; never explicitly told her to "make sure that you include in your sales and in your cost of goods sold all transactions where you didn't make a profit," Aplt. App., Vol. 2 at 526; and he did not think there was anything suspicious about the gross receipts and cost-of-goods-sold numbers she provided to him. Mr. Powell also agreed with the statement that "someone who is uneducated in tax law and how [a] tax return is done might say the transactions I don't make a profit on I don't need to report them because it doesn't affect my ultimate tax . . . ." *Id.* at 529. He further testified that he kept preparing defendant's taxes– even after learning of the criminal investigation– explaining, "from my end I had nothing there to say anything was going wrong." *Id.* at 532. And even after speaking with the IRS criminal investigators three times and giving testimony to the grand jury, he continued to do her taxes because he "still didn't think she was doing anything wrong." *Id.* at 533.

Defense counsel also solicited testimony from Mr. Powell that the government attorneys were having difficulty with the concept of how you

-7-

calculate profit in relation to the cost of goods sold so Mr. Powell prepared his own exhibit to help explain it. *Id.* at 529-530; *see also* Aplt. Br., Att. D. Mr. Powell further testified that he never went over anything like what was contained in the exhibit with the defendant. Defense counsel also solicited testimony from Agent Lynch, the IRS investigator. Agent Lynch testified that to determine defendant's gross receipts he needed to look at the gross receipts definition in the IRS tax code, the Department of Treasury regulations, and case law. As defendant argues in her opening brief, "Agent Lynch's testimony, in conjunction with Mr. Powell's, supports [defendant's] good faith defense in that it demonstrates that the information she would need to know to accurately report her business income was extremely complex." Aplt. Br. at 23-24.

Defendant also testified in support of her good faith defense. She explained that when she broke even on a sale she would consider it a "wash," and she did not write it down in her records or report it on her taxes because "there was no consequence for income." Aplt. App., Vol. 5 at 1306. She testified that she did not knowingly leave off gross receipts or not report gross receipts to try to cheat on her taxes and she didn't report them to Mr. Powell because she didn't know they were gross receipts. She closed her direct testimony by stating "I still am not clear that those were gross receipts, and I still think I did my taxes right. I just see that the government wants you to put stuff down even if you didn't make anything on it. I didn't know that at the time." *Id.*, Vol. 6 at 1418.

-8-

Defense counsel argues that the proffered testimony that Mr. Powell did not believe defendant intentionally underreported payments "went to the very heart of her defense," Aplt. Br. at 24, and was not harmless. Although Mr. Powell's excluded testimony would have been consistent with defendant's good faith defense, there was sufficient testimony in the record to support her defense, namely, the complexities of the tax code, Mr. Powell's statement that he continued to do her taxes because he did not believe she was doing anything wrong, and defendant's own testimony. Mr. Powell's statement would have been cumulative and would not have aided the jury in further understanding his testimony. The jury could reasonably infer from Mr. Powell's testimony that he did not believe defendant intentionally underreported her income.

In addition, the government contends that the evidence against defendant was "overwhelming," and would have led the jury to convict her even if Mr. Powell's statement had been admitted. Aplee. Br. at 19-20. Defendant's main defense was that she did not intentionally violate the tax laws because she did not believe she had to report "wash" sales. But the other part of her defense had to respond to the government's position that in order to account for more than $1.4 million in unreported sales, she would also have had to underreport her purchases by $1.4 million so that the net effect on her profits was zero.

Agent Lynch testified that after reviewing her tax returns and bank records, he could find no evidence that she underreported the amount of hair-care products

she purchased, nor could he find that she had an additional $1.4 million to spend. To the contrary, Agent Lynch testified that defendant actually overstated her purchases and that from 2003 to 2005 defendant was running a deficit of about the same amount. He further testified that defendant's personal expenditures exceeded the amount of money she had available in income and bank-account savings by $1.5 million over those three years.

If the jury credited Agent Lynch's testimony and analysis, defendant's "wash" sales defense would be untenable unless she had some additional off-the-books source of funds that was not included in the records obtained by the government. Defendant did claim to have such an off-the-books source of funds: she testified that she found $1 million in cash and $80,000 in bonds in her parents' house after her mother died. She testified that she put this money in a box and put it under her bed. When asked if there was something preventing her from putting the money in the bank, she testified that "she just didn't want to," although she also testified that she did not "have a problem" using banks. Aplt. App., Vol. 6 at 1456.

Defendant never gave an exact amount that was in the box and in later testimony stated that there were actually two boxes– one with about $700,000 in it and one with about $300,000 in it. Defendant also failed to adequately explain why she would ever need to withdraw money from her bank accounts if she had a box (or boxes) with $1 million in cash. Moreover, defendant never squarely

addressed how a purported cash hoard of $1.1 million would be enough to account for more than $1.4 million in additional hair-care product as well as over $1.5 million in personal spending.

At sentencing, the district court stated that "this defense was so feckless and incredible that if the matter was not so serious it would be laughable. Boxes full of money, quantities of money increasing every time the government was able to demonstrate that the initial amount claimed in the initial box was inadequate mathematically to support and sustain her position." *Id.* at 1640. Viewing the record as a whole, any error in excluding Mr. Powell's proffered testimony did not have a substantial influence on the outcome of the trial and therefore any error was harmless. *See Burgess*, 576 F.3d at 1100-01.

2. Good-faith jury instruction

Defendant argues that the district court abused its discretion when it refused to give her tendered good-faith instruction. Defendant initially tendered two separate instructions–one for willfulness and one for good-faith, although the willfulness instruction also contained good-faith language. The district court ultimately rejected defendant's stand-alone good-faith instruction, but gave the jury a three-paragraph instruction, which included as its third paragraph the good-faith language from defendant's proposed willfulness instruction. The instruction stated:

Defendant is considered to have acted "willfully," as that term is used in element number 4 of Instruction No. 10, when she is found to have acted with the voluntary intent to violate a known legal duty.

Defendant acted willfully if she knew it was her legal duty to include truthful information in her individual or corporate tax returns, and then voluntarily and intentionally included false information.

Defendant is not considered to have acted willfully if her conduct resulted from negligence, inadvertence, accident, mistake, or reckless disregard for the requirements of the law, or resulted from a good faith misunderstanding that she was not violating a duty that the law imposed on her.

Aplt. Br., Att. H.

Defendant concedes that the district court's instruction gave the jury an accurate definition of willfulness. She argues, however, that the district court's refusal to give her stand-alone good-faith instruction meant that the jury was not adequately instructed regarding the "quantum of evidence necessary to consider [her] defense, the government's burden to disprove her good faith defense, and the fact that such good faith belief need not be rational or reasonable," *Id*. at 30.

When considering a jury-instruction challenge:

We review the instructions as a whole de novo to determine whether they accurately informed the jury of the governing law. We then review any instructions offered by the defendant and rejected by the court. A defendant is entitled to an instruction on his theory of the case if the instruction is a correct statement of the law, and if he has offered sufficient evidence for the jury to find in his favor. We review a district judge's refusal to issue a requested instruction under this standard for abuse of discretion.

*United States v. Pinson*, 542 F.3d 822, 831 (10th Cir. 2008) (citations omitted).

-12-

The government argues that the district court adequately instructed the jury.[1] We agree. First, the jury was properly instructed on the parties' respective burdens of proof in the district court's general reasonable doubt instruction. That instruction explained to the jury: "The law does not require a defendant to prove her innocence or produce any evidence at all. The government has the burden of proving defendant guilty beyond a reasonable doubt concerning any alleged crime then under your consideration." Aplt. Br., Att. I, Instr. No. 6. Second, the district court's willfulness instruction covered defendant's good-faith defense, explaining that a "[d]efendant is not considered to have acted willfully if her conduct resulted from negligence, inadvertence, accident, mistake, or reckless disregard for the requirements of the law, or resulted from a good-faith misunderstanding that she was not violating a duty that the law imposed on her." *Id.*, Instr. No. 11.

The district court's instructions correctly set forth the definition of willfulness, correctly informed the jury that the government bore the burden of proving defendant's willfulness beyond a reasonable doubt, and correctly explained that a person who makes a good-faith mistake was not acting willfully.

---

[1] The government's brief argues three alternative grounds for resolving defendant's jury instruction challenge: (1) waiver; (2) a good-faith instruction was not required; and (3) the district court's instructions to the jury were adequate. Because we conclude that the district court did not abuse its discretion in the instructions it gave to the jury, we need not reach the first two grounds argued by the government.

-13-

Because juries are presumed to follow their instructions, *see Richardson v. Marsh*, 481 U.S. 200, 211 (1987), defendant's argument amounts to no more than a claim that her stand-alone good-faith instruction would have given the jury a more clear understanding of the law. But as defendant acknowledges, this is not a basis for finding an abuse of discretion. *See* Aplt. Br. at 27 ("[A theory of the defense] instruction is not required . . . if it would 'simply give the jury a clearer understanding of the issues.'" (quoting *United States v. Bowling*, 619 F.3d 1175, 1183-84 (10th Cir. 2010)). We therefore see no abuse of discretion in the district court's refusal to give defendant's proposed instruction.

### 3. Prosecutorial Misconduct

Defendant contends that the prosecutor's continuing course of misconduct throughout her trial requires the reversal of her convictions. Defendant argues that the prosecutor (1) improperly solicited irrelevant and derogatory testimony regarding her religion; (2) failed to disclose his intent to introduce evidence that he subsequently used as improper propensity evidence at trial; and (3) engaged in improper argument throughout his closing and rebuttal closing arguments. Defendant admits, however, that she did not contemporaneously object to any of this alleged misconduct during trial. Because defendant failed to object at trial, we review the alleged misconduct for plain error. *See United States v. Taylor*, 514 F.3d 1092, 1095 (10th Cir. 2008).

To prevail on plain-error review, defendant must "show there is (1) error, (2) that is plain, (3) which affects [her] substantial rights, and (4) which seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Poe*, 556 F.3d 1113, 1128 (10th Cir. 2009) (quotations omitted). Viewing the alleged misconduct in the context of the whole trial, *see United States v. Lopez-Medina*, 596 F.3d 716, 738 (10th Cir. 2010), defendant has failed to show plain error.

<u>Conclusion</u>

The judgment of the district court is AFFIRMED.

Entered for the Court

Wade Brorby
Senior Circuit Judge